

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 6, 2015**

_____
**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 13-33757-SGJ-7 |
| JEREMY WIGGAINS, | § | (Chapter 7) |
|     Debtor. | § | |

_____

| | | |
|---|---|---|
| TANYA WIGGAINS, | § | |
|     Plaintiff, | § | |
| VS. | § | ADVERSARY NO. 14-03064-SGJ |
| | § | |
| DIANE G. REED, CHAPTER 7 TRUSTEE, | § | |
|     Defendant. | § | |

MEMORANDUM OPINION AND JUDGMENT: DECLARING
MARITAL PARTITION AGREEMENT AVOIDABLE PURSUANT TO
SECTION 548(a)(1)(A); AVOIDING SAME; AND DECLARING BALANCE
OF HOMESTEAD NET SALE PROCEEDS IN EXCESS OF SECTION
522(p) CAP TO BE NONEXEMPT PROPERTY OF THE ESTATE

I.    Introduction

    The above-referenced Adversary Proceeding (herein so called) involves a large and

valuable Texas homestead (the "Texas Homestead") formerly owned by the Chapter 7 Debtor

(the "Debtor") and his non-debtor spouse (the "Non-Filing Spouse"). The Texas Homestead was

sold by a Chapter 7 Trustee (the "Trustee") during the above-referenced bankruptcy case for $3.4 million, netting $568,668.41 of cash proceeds after payment of all liens, claims, and encumbrances (the "Homestead Net Sale Proceeds").   This Adversary Proceeding presents a battle over the Homestead Net Sale Proceeds.   The court is reminded of Le Corbusier's saying that "the home should be the treasure chest of living."   However, a battle over homestead sale proceeds in a bankruptcy case was surely not what the famous architect had in mind.

In any event, in the days before Congress's enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")[1], the disputes presented in this Adversary Proceeding would never have arisen–for the Debtor and the Non-Filing Spouse would have simply been entitled to the entire $568,668.41 of Homestead Net Sale Proceeds without controversy.   Why?  Because the Debtor elected to exempt the Texas Homestead under the state law of his domicile, pursuant to section 522(b)(3)(A) of the Bankruptcy Code and section 41.001(c) of the Texas Property Code.   And Texas State law provides for an essentially unlimited homestead exemption–that is an exemption that is capped only as to acreage allowed (not applicable in the case at bar), and is ***not limited by dollar value***.[2]   However, in this post-BAPCPA world, there were two events that happened involving the Texas Homestead that are now relevant.

> (A) First, the Debtor and the Non-Filing Spouse acquired the Texas Homestead ***well-within the 1215-day period preceding the date of the filing of the bankruptcy petition*** (they purchased the Texas Homestead on or about November 27, 2012; the

---

[1] Pub. L. No. 109-8, § 322, 119 Stat. 23, 96-97 (2005).

[2] The State of Texas has long had a generous homestead exemption rooted in both the state Constitution and statute. Tex. Const. Art. XVI § 50 (2013); Tex. Prop. Code § 41.001 (2014).   In fact, legend has it that the generous Texas homestead laws are what prompted famous frontiersman, Congressman, and Alamo-defender Davy Crockett to flee a meeting of his creditors in Tennessee, shouting "You can all go to Hell.  I'm going to Texas!"–although this statement has also been tied to Davy Crockett's political fatigue.

bankruptcy petition date was July 29, 2013).[3]  Thus, pursuant to section 522(p)(1)
(A) and (D) of the Bankruptcy Code–the so-called "mansion loophole" enacted as a
part of BAPCPA[4]–the Debtor may not exempt more than $155,675 in value on the
Texas Homestead.  The Debtor agreed early on with the Chapter 7 Bankruptcy
Trustee and certain creditors that his homestead exemption would be capped at
$130,675.[5]  Moreover, we know from the Fifth Circuit's opinion in *Kim v. Dome
Entertainment Center, Inc.* (*In re Kim*), 748 F.3d 647 (5th Cir. 2014) that, while
spouses who choose to file bankruptcy ***jointly*** are entitled to ***double*** their homestead
exemption,[6] when only ***one*** spouse files bankruptcy, there is not only no doubling of
the exemption (*i.e.*, because section 522(m) technically does not apply), but the non-
debtor spouse has no ***per se*** right to some precise amount of compensation from the
trustee above and beyond the section 522(p) cap, ***simply because the property was
also her homestead***.[7]

---

[3] It is also notable that the Texas Homestead was acquired by the Debtor and Non-Filing Spouse ***after*** the enactment
in 2005 of BAPCPA.  Thus, no Constitutional "takings" arguments were made.  *See discussion* in *Kim v. Dome
Entertainment Center, Inc.* (*In re Kim*), 748 F.3d 647, 657 (5th Cir. 2014) (where a non-filing spouse argued that a
"taking" in violation of the Due Process clause of the Fifth Amendment of the United States Constitution had
occurred, where a residence had been sold by the trustee in her spouse's bankruptcy case and, while her spouse was
allowed a capped homestead exemption pursuant to section 522(p) of the Bankruptcy Code, she had not been
tendered any compensation for the loss of her homestead rights in the residence; note that the residence in the *Kim*
case had been purchased prior to the enactment of BAPCPA and the Fifth Circuit, citing Supreme Court precedent,
noted that a "Takings Clause objection could not be successfully interposed if the property interest 'came into being
after enactment of the provision.'"); *see also Thaw v. Moser* (*In re Thaw*), 769 F.3d 366, 369-71 (5th Cir. 2014)
(applying the reasoning in *In re Kim* regarding interests acquired after enactment of BAPCPA to reject a non-filing
spouse's "takings" claim for loss of her homestead interest after trustee sold the residence in her spouse's
bankruptcy.).

[4] *See* H.R. Rep. 109-31, pt. 1, at 15-16 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 102.

[5] The Debtor first entered an agreed order with the Trustee on December 2, 2013, ordering that the Debtor's
homestead exemption would be allowed in the amount of $155,675.  *See* Trustee's Trial Exhibit # 8 and Plaintiff's
Trial Exhibit # 4, [DE # 138 in the Bankruptcy Case].  However, the Debtor later, on January 10, 2014, entered into
an agreed order [DE # 178 in the Bankruptcy Case] with two creditors who had also objected to the Debtor's
homestead exemption, that his homestead exemption would be capped in the amount of $130,675.  The amount was
likely compromised further downward, due to the fact that one creditor had argued that the Debtor's homestead
exemption should also be reduced pursuant to section 522(q)(1)(B)(i) of the Bankruptcy Code (arguing that the debt
owed by the Debtor to the creditor might constitute a violation of securities laws).  Presumably the Debtor chose to
compromise his homestead exemption further to avoid additional expense and delay of litigation and to enjoy
payment sooner rather than later on his homestead exemption.  Note that references to "DE # __ in the Bankruptcy
Case" throughout this Opinion refer to the docket entry number at which a pleading appears in the docket
maintained by the Bankruptcy Clerk in the above-referenced bankruptcy case.  Further note that references to "DE #
__ in the AP" herein refer to the docket entry number at which a pleading appears in the docket maintained by the
Bankruptcy Clerk in the Adversary Proceeding.  Additionally, note that references to Trustee's and Plaintiff's
exhibits throughout relate to those exhibits admitted at the Trial on this matter held on October 21, 2014.

[6] *See* 11 U.S.C. § 522(m) (2015) (stating that the section 522 exemption regime applies "separately with respect to
each debtor in a joint case"); s*ee also Davis v. Davis (In re Davis),* 170 F.3d 475, 478 (5th Cir. 1999).

[7] In some cases there may be a right to compensation to the non-filing spouse, but the Fifth Circuit has not
articulated the parameters for when and how to calculate the compensation (it has only stated that § 363(j) of the
Bankruptcy Code is the likely mechanism or context to request compensation for a homestead interest).

(B)  Second, there was another event involving the Texas Homestead that not only distinguishes this case from precedent such as *In re Kim*[8] but, ultimately, was the impetus for the filing of this Adversary Proceeding.  Specifically, a few hours before the Debtor filed bankruptcy, on July 29, 2013, the Debtor and the Non-Filing Spouse executed and filed in the Dallas County, Texas Property Records a marital property agreement (the "Partition Agreement"),[9] purporting to recharacterize the Texas Homestead from community property to property which was half the Debtor's separate property and half the Non-Filing Spouse's separate property.  Thus, the Non-Filing Spouse argues that half of the Texas Homestead never became property of the bankruptcy estate, pursuant to section 541(a)(2) of the Bankruptcy Code, and that she is entitled to half of the **$568,668.41** of the Homestead Net Sale Proceeds from the Texas Homestead (**$284,334.21**)–above and beyond the **$130,675** the Debtor was already allowed.

This Adversary Proceeding was commenced with the Non-Filing Spouse's filing of a complaint ("Complaint") against the Trustee, seeking a declaratory judgment, pursuant to 28 U.S.C. § 2201, as to the relative rights between her and the Trustee concerning the Homestead Net Sale Proceeds, by virtue of the Partition Agreement.  The Trustee responded with an answer and counterclaims ("Answer and Counterclaims") of fraudulent transfer against the Non-Filing Spouse[10]–asserting that the Debtor's entry into the Partition Agreement immediately prior to the bankruptcy filing (purporting to recharacterize the Texas Homestead from community property into one-half his separate property and one-half her separate property) constituted a ***voidable transaction committed with an actual intent to hinder and delay creditors***, pursuant to section 548(a)(1)(A)  of  the  Bankruptcy  Code[11]  and  pursuant  to  section  24.005(a)(1)  of  the  Texas

---

[8] *See also In re Thaw*, 769 F.3d 366 (5th Cir. 2014).

[9] *See* Trustee's Trial Exhibit # 1 and Plaintiff's Trial Exhibit # 1.

[10] Note that Trustee likewise requested declaratory judgment, pursuant to 28 U.S.C. § 2201 (2012), as to the Non-Filing Spouse's rights to the Homestead Net Sale Proceeds.

[11] Note that Trustee did not assert a constructive fraudulent transfer claim.

Business & Commerce Code (TUFTA), which is available to the Trustee pursuant to section 544 (b) of the Bankruptcy Code.[12]

In summary, this Adversary Proceeding is ultimately about whether: (a) an otherwise valid marital partition agreement, (b) executed on the eve of a husband's bankruptcy case, (c) that purports to recharacterize a community property Texas homestead into one-half husband's separate property and one-half wife's separate property, (d) when such homestead will be subject to the section 522(p) cap in the husband's bankruptcy case, (e) can effectively deprive the bankruptcy estate from realizing half of the net proceeds from the sale of the homestead, or, rather (f) can the marital partition agreement be avoided if it is found to have been made with actual intent to hinder or delay creditors, and if it had the effect of depriving the creditors of part of what would have been available to them pursuant to sections 541(a)(2) and 522(p) and possibly even section 363(j) of the Bankruptcy Code?[13]

The court has determined that it has subject matter jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C), (H), and (O). The bankruptcy court additionally believes that it has Constitutional authority to enter a final judgment in this Adversary Proceeding, considering the holdings of *Stern v. Marshall*[14] and *Executive Benefits*.[15] Although a review of the Claims Register in this case does not reflect that the Non-Filing Spouse filed any proof of claim in the underlying bankruptcy case, she has essentially made a claim against the estate through the filing

---

[12] The Debtor is not a party in this Adversary Proceeding.

[13] Note that the parties did not ask the court, at this juncture, to determine whether the Non-Filing Spouse might have a right to a portion of the Homestead Net Sale Proceeds pursuant to 11 U.S.C. § 363(j) (2012). More to follow regarding this.

[14] *Stern v. Marshall*, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011).

[15] *Exec. Benefits Ins. Agency v. Arkinson (In re Bellingham Ins. Agency)*, 134 S. Ct. 2165, 189 L. Ed. 2d 83 (2014).

of the Adversary Proceeding in which she asserts an interest in the Homestead Net Sale Proceeds;[16] moreover, the Trustee's fraudulent transfer claims are essentially intertwined with and constitute a defense against the Non-Filing Spouse's claims.    Additionally, this is a dispute that could only arise in a bankruptcy case.

The court held a trial on the Complaint and Answer and Counterclaims on October 21, 2014 (the "Trial").[17]    The parties submitted certain post-Trial legal briefing thereafter.[18]    The court has concluded that the Partition Agreement constituted a fraudulent transfer, pursuant to section 548(a)(1)(A) of the Bankruptcy Code, entered into with the actual intent to delay and hinder creditors, which, if not avoided, has the effect of depriving the creditors of the bankruptcy estate of as much as **$284,334.21** of value to which they would have otherwise been entitled.[19] This Memorandum Opinion constitutes the court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.    Where appropriate, a finding of fact will be construed as a conclusion of law and vice versa.

II.    Findings of Fact

###    A. *Plaintiff's Family Background*

Plaintiff, the Non-Filing Spouse, is the spouse of Jeremy Wiggains (the "Debtor"), debtor in the above-referenced bankruptcy case (the "Bankruptcy Case"), which was filed on July 29,

---

[16] *See* 11 U.S.C. § 102(2) (2012) ("'claim against the debtor' includes claim against property of the debtor").

[17] Note that the court will cite to the audio recording at the Trial held on October 21, 2014 in referring to testimony presented at trial in the following manner: FTR, 10/21/2014 at __:__:__.

[18] *See* [DE ## 28, 30, 32, and 33 in AP].

[19] As further explained herein, the court notes that, even after avoiding the Partition Agreement, the Non-Filing Spouse may still have the opportunity to make some claim to the Homestead Net Sale Proceeds, pursuant to section 363(j) and the rationale of *Kim* and *Thaw*.  11 U.S.C. § 36 (j) (2012); S*ee generally, In re Kim*, 748 F.3d 647 (5th Cir. 2014); *accord In re Thaw*, 769 F.3d 366 (5th Cir. 2014).

2013 (the "Petition Date").[20] The Non-Filing Spouse and Debtor lived together as a married couple since 2007; together they have three young children.[21] Prior to the Bankruptcy Case, the Non-Filing Spouse worked as a homemaker.[22] During the relevant time period, Debtor owned a local automobile dealership in the Dallas/Fort Worth area named Straight Line Automotive Group, LLC ("SLAG"), as well as other similar companies.[23] SLAG also filed a Chapter 7 bankruptcy petition on July 13, 2013, and its bankruptcy case is pending.[24]

### B. Acquisition of the Texas Homestead

On or about November 27, 2012, less than 1,215 days prior to the Petition Date, Debtor and the Non-Filing Spouse acquired an interest in the property located at 6520 Northaven Road, Dallas, Texas 75230 (the "Texas Homestead"), which Debtor and the Non-Filing Spouse claim was their homestead as of the Petition Date, without evidence or dispute to the contrary.[25] The Texas Homestead and proceeds from its sale are at the core of this dispute. Debtor and the Non-Filing Spouse purchased the Texas Homestead as an investment, with the intent to make money from its sale.[26] The Non-Filing Spouse and Debtor[27] performed valuable improvements to the

---

[20] *See* Joint Pretrial Order [DE # 19 in AP], p. 4; Trustee's Trial Exhibit # 4 [DE # 62 in Bankruptcy Case].

[21] *See id.*; Trustee's Trial Exhibit # 1, p. 1 and Plaintiff's Trial Exhibit # 1, p. 1.

[22] FTR, 10/21/2014 at 10:14:19 through 10:14:56.

[23] *See* Plaintiff's Trial Exhibit # 2 [DE # 40 in Bankruptcy Case]. Debtor's schedules list a 100% ownership interest not only in Straight Line Automotive Group, LLC, but also in Crown Motorsports, Crown Carriers, Crown Dealer Services, and Celebrity Limousine. *Id.*, p. 4.

[24] *See In re Straight Line Automotive Group, LLC*, No. 13-33543, filed July 13, 2013 (Bankr. N.D. Tex.).

[25] *See* Joint Pretrial Order [DE # 19 in AP], p. 4; Trustee's Trial Exhibit # 4; Trustee's Trial Exhibit # 8 and Plaintiff's Trial Exhibit # 4 [DE # 138 in the Bankruptcy Case], and [DE # 178 in the Bankruptcy Case]; FTR, 10/21/2014 at 10:13:50 through 10:14:05.

[26] *See* FTR, 10/21/2014 at 10:21:28 through 10:21:45.

[27] The Non-Filing Spouse testified that she performed the labor on the improvements while Debtor worked at his employment, made no mention of ever working outside the home, and testified regarding the Debtor's various

Texas Homestead in the months leading up to the Bankruptcy Case, including adding a home theatre and light fixtures, vaulting a ceiling in the living room, renovating cabinets in the kitchen and master bathroom, painting, and gating the Texas Homestead.[28]

### C. The Partition Agreement

On the Petition Date, prior to filing the Bankruptcy Case, Debtor and the Non-Filing Spouse properly executed a marital property agreement (the "Partition Agreement").[29] The Partition Agreement was recorded less than one hour before Debtor filed his petition in the Bankruptcy Case.[30] The purported effect of the Partition Agreement was to partition the Non-Filing Spouse and Debtor's community interests in and to the Texas Homestead in order that: "Wife shall hold and possess, as her separate property, a one-half (1/2) undivided ownership interest in the [Texas Homestead]; and (b) Husband shall hold and possess, as his separate property, a one-half (1/2) undivided ownership interest in the [Texas Homestead]" ("Partitioning Terms").[31] The Partition Agreement further provided that the Non-Filing Spouse and Debtor would have "sole and exclusive authority, management, and control of their separate property, including without limitation the right to convey, encumber, dispose, sale, gift, exchange, devise, or bequest their separate portions of the Homestead Property" (the "Management Terms").[32]

---

employment positions in discussing financial hardship. The court infers from this testimony that Debtor contributed financially to the improvements and, therefore, loosely attributes the improvements here to both, based on the minimal record on the subject. *See* FTR, 10/21/2014 at 10:14:19 through 10:14:56, 10:17:50 through 10:18:15.

[28] *See* FTR, 10/21/2014 at 10:14:19 through 10:15:40.

[29] *See* Joint Pretrial Order [DE # 19 in AP], p. 4; Trustee's Trial Exhibit # 1 and Plaintiff's Trial Exhibit #1.

[30] *See id.*; Trustee's Trial Exhibit # 2.

[31] *See* Joint Pretrial Order [DE # 19 in AP], pp. 4-5; Trustee's Trial Exhibit # 1 and Plaintiff's Trial Exhibit #1.

[32] *Id.*

The Non-Filing Spouse, Debtor and their attorney testified at the Trial that the Non-Filing Spouse and Debtor entered into this Partition Agreement after consulting their attorney about bankruptcy, and upon his advice.[33] Debtor testified that he entered into the Partition Agreement with his bankruptcy filing in mind,[34] and the Non-Filing Spouse testified that she was aware of Debtor's decision to file bankruptcy when she executed the Partition Agreement.[35] The couple discussed the homestead exemption with their attorney and the approximate $156,000.00 exemption cap imposed by section 522(p) of the Bankruptcy Code.[36] Debtor understood then that his exemption in bankruptcy with respect to the Texas Homestead would be limited to approximately $156,000.00 and thought at the time that the Texas Homestead would net more at sale than this amount.[37] State Bank & Trust ("State Bank") and TIB-The Independent Banker's Bank ("TIB") had a first and second lien on the Texas Homestead (the "Homestead Liens")[38] that Debtor understood to secure approximately $2.7 million worth of indebtedness at the time that he filed for bankruptcy,[39] which was again within one hour of executing and recording the Partition Agreement.[40] The Non-Filing Spouse testified that she had reason to believe, before

---

[33] *See* FTR, 10/21/2014 at 10:15:56 through 10:17:15, 10:25:08 through 10:26:00.

[34] *See* FTR, 10/21/2014 at 10:26:00 through 10:26:11.

[35] *See* FTR, 10/21/2014 at 10:12:52 through 10:13:04.

[36] *See* FTR, 10/21/2014 at 10:16:18 through 10:17:13, 10:26:20 through 10:23:15, 10:26:03 through 10:26:50; 10:36:34 through 10:37:42.

[37] *See* FTR, 10/21/2014 at 10:29:33 through 10:30:00; 10:36:34 through 10:37:42.

[38] *See* Joint Pretrial Order [DE # 19 in AP], p. 5; Plaintiff's Trial Exhibit # 3, p. 2 [DE # 71 in Bankruptcy Case]; Trustee's Trial Exhibit # 11.

[39] *See* FTR, 10/21/2014 at 10:27:12 through 10:27:46.

[40] *See* Joint Pretrial Order [DE # 19 in AP], p. 4; Trustee's Trial Exhibit # 1 and Plaintiff's Trial Exhibit # 1; Trustee's Trial Exhibit # 2.

entering into the Partition Agreement, that equity existed in the Texas Homestead.[41] The couple and their attorney also discussed having the Non-Filing Spouse jointly file bankruptcy,[42] in order to claim a second exemption in the Texas Homestead,[43] but chose instead to execute the Partition Agreement for the purpose of excluding one-half of what was realized from the sale of the Texas Homestead from Debtor's bankruptcy estate (the "Estate") in favor of the Non-Filing Spouse.[44] The Non-Filing Spouse was not contractually obligated (*i.e.* as a co-obligor or a guarantor) on any of Debtor's business debts.[45] Debtor testified that he felt that entering into the Partition Agreement was the right thing to do, because the Non-Filing Spouse was not contractually obligated on his business debts, and he did not believe that her interest in the community estate should be available for the payment of his creditors' claims.[46]

### D. Debtor's Homestead Exemption

In his amended Schedules in the Bankruptcy Case, Debtor filed an exemption in the Texas Homestead, subject to the Partition Agreement.[47] Trustee objected to this exemption to the extent that it exceeded the $155,675.00 cap imposed on a homestead purchased within 1,215

---

[41] *See* FTR, 10/21/2014 at 10:20:58 through 10:21:43; Trustee's Trial Exhibit # 5 [DE # 16 in Bankruptcy Case], Exhibit C attached thereto.

[42] *See* 11 U.S.C. § 522(m) (West 2015); FTR, 10/21/2014 at 10:16:18 through 10:17:13; 10:22:26 through 10:23:16; 10:25:08 through 10:26:50; 10:37:26 through 10:37:37.

[43] *See* FTR, 10/21/2014 at 10:16:18 through 10:17:13; 10:37:26 through 10:37:37.

[44] *See* FTR, 10/21/2014 at 10:16:18 through 10:17:13, 10:21:52 through 10:22:16; 10:37:37 through 10:37:44.

[45] *See* FTR, 10/21/2014 at 10:13:04 through 10:13:13; 10:31:28 through 10:31:55.

[46] *See* FTR, 10/21/2014 at 10:31:28 through 10:31:56. *But see* Tex. Fam. Code § 3.202 (West 2015) (explaining that all of a spouse's sole and joint management community property is subject to the liabilities incurred by the spouse before or during marriage, and all community property is subject to tort liability of either spouse incurred during marriage).

[47] *See* Trustee's Trial Exhibit # 4 [DE # 62 in Bankruptcy Case].

days of bankruptcy under 11 U.S.C. § 522(p).[48]  Two creditors separately joined in Trustee's objection as well.[49]  On December 2, 2013 and January 10, 2014, the court signed Agreed Orders resolving Trustee's and the creditors' objections to Debtor's homestead exemption, which applied the exemption cap of section 522(p) to Debtor's homestead exemption and resulted in an agreed-upon prompt distribution to Debtor of $130,675.00 (the "Homestead Exemption Orders").[50]

### E.  Marketing and Sale of the Texas Homestead

The Non-Filing Spouse and Debtor began marketing the Texas Homestead for sale, even before Debtor's bankruptcy filing, on or about June 26, 2013, when Debtor entered into a Residential Listing Agreement with Ebby Halliday Real Estate, Inc. d/b/a Ebby Halliday, REALTORS (the "Realtors").[51]  The listing price of the Texas Homestead was approximately $3.99 million.[52]  The Non-Filing Spouse testified that she expected at the time of listing to make money from the sale of the Texas Homestead.[53]  Debtor had experience in selling homes.[54]  He testified that he appreciated the fact that significant equity existed in the Texas Homestead at the

---

[48] *See* [DE # 94 in Bankruptcy Case].

[49] *See* [DE # 96 in Bankruptcy Case] and [DE # 97 in Bankruptcy Case].

[50] *See* Trustee's Trial Exhibit # 8 and Plaintiff's Trial Exhibit # 4 [DE # 138 in Bankruptcy Case], and [DE # 178 in Bankruptcy Case].  *See also* n.5, *supra*.

[51] *See* FTR, 10/21/2014 at 10:19:16 through 10:20:43, 10:26:52 through 10:27:04; Trustee's Trial Exhibit # 5 [DE # 16 in Bankruptcy Case], Exhibit C attached thereto.

[52] *See* FTR, 10/21/2014 at 10:19:57 through 10:20:54; 10:27:04 through 10:27:10; Trustee's Trial Exhibit # 5 [DE # 16 in Bankruptcy Case], Exhibit C attached thereto.

[53] *See* FTR, 10/21/2014 at 10:21:07 through 10:21:43.

[54] *See* FTR, 10/21/2014 at 10:27:48 through 10:28:32.

time of the listing, based on the Realtors' statements, although he noted he had thought that their previous homestead had equity and he basically broke even on that sale.[55]

On August 1, 2013, an offer for $3.4 million was made on the Texas Homestead; the offer was signed by the buyer on August 4, 2013 (the "Purchase Contract").[56]  Upon Trustee's motion,[57] originally brought by Debtor,[58] and after a sale hearing held on September 6, 2013, the court authorized the sale of the Texas Homestead under the Purchase Contract (the "Sale Order").[59]  The Sale Order authorized this sale free and clear of any liens and encumbrances pursuant to 11 U.S.C. § 363(f)(3), and provided that any liens or other interests in the Texas Homestead would attach to the net sale proceeds according to the same extent and in the same order of priority that existed prior to the sale.[60]  The Sale Order required Trustee to retain the remainder of the sale proceeds except for payment of the Homestead Liens,[61] closing costs, and prorated real estate taxes (the "Disbursements").  The sale closed on or about September 17, 2013.[62]  Afterwards, Trustee made the Disbursements, leaving a balance of $568,668.41 as the Homestead Net Sale Proceeds.[63]  The Homestead Net Sale Proceeds were further decreased by a

---

[55] *Id.*

[56] *See* Joint Pretrial Order [DE # 19 in AP], p. 5; Trustee's Trial Exhibit # 5 [DE # 16 in Bankruptcy Case], Exhibit B attached thereto.

[57] *See* Trustee's Trial Exhibit # 6 [DE # 56 in Bankruptcy Case].

[58] *See* Trustee's Trial Exhibit # 5 [DE # 16 in Bankruptcy Case].

[59] *See* Joint Pretrial Order [DE # 19 in AP], p. 5; Plaintiff's Trial Exhibit # 3 [DE # 71 in Bankruptcy Case].

[60] *Id.*

[61] The Sale Order actually instructed the Trustee to wait thirty days before paying the consensual liens on the Texas Homestead in case any party in interest wanted to challenge the liens in an adversary proceeding.  No party did and the consensual liens were ultimately paid. *See id.*

[62] *See* Joint Pretrial Order [DE # 19 in AP], p. 6.

[63] *See id.*; Trustee's Trial Exhibit #7, Form 2, pp. 1 and 2.

disbursement of $130,675.00 to Debtor, pursuant to the Homestead Exemption Orders mentioned above.[64]

III.    Contentions of the Parties

In her Complaint, the Non-Filing Spouse contends that she is entitled to half of the Homestead Net Sale Proceeds, due to her separate property interest in the Texas Homestead, and seeks declaratory judgment from the court determining the extent of her interest, rights, claims, encumbrances and the like, relative to the Estate, in and to the Homestead Net Sale Proceeds, pursuant to 11 U.S.C. § 541, and by virtue of the Partition Agreement and Texas law.

Through the Answer and Counterclaims, Trustee seeks to avoid the partition of the Texas Homestead from community into separate property, by virtue of the Partition Agreement, pursuant to 11 U.S.C. § 548(a)(1)(A) and section 24.005 of the Texas Business & Commerce Code ("TUFTA"), and to retain the full balance of the Homestead Net Sale Proceeds, under 11 U.S.C. § 550(a).  Trustee denies the Non-Filing Spouse's contention that she is entitled to half of the Homestead Net Sale Proceeds, and requests that the court issue a declaratory judgment, pursuant to 28 U.S.C. § 2201, determining that the Non-Filing Spouse has no right or interest in the Homestead Net Sale Proceeds.  Trustee also contends that it is just and equitable that the court award her attorneys' fees incurred in this lawsuit, pursuant to section 24.013 of TUFTA. The Non-Filing Spouse denies that Trustee is entitled to recover on her claims.

---

[64] *See* Joint Pretrial Order [DE # 19 in AP], p. 6; Trustee's Trial Exhibit # 7, Form 2, pp. 1 and 2; Trustee's Trial Exhibit # 8 and Plaintiff's Trial Exhibit # 4 [DE # 138 in the Bankruptcy Case], and [DE # 178 in the Bankruptcy Case].

IV.     Conclusions of Law

    ***A. What Was the Nature of the Debtor's and the Non-Filing Spouse's Property Interests in the Texas Homestead as of the Petition Date?***

    The Non-Filing Spouse contends that she is entitled to half of the Homestead Net Sale Proceeds on account of her separate property interest in the Texas Homestead as of the Petition Date. Implicit in the Non-Filing Spouse's argument is the concession that the Estate is entitled to the other half of the Homestead Net Sale Proceeds, minus the $130,675.00 already paid to Debtor. Trustee denies the Non-Filing Spouse's contention that she has any interests or rights in the Homestead Net Sale Proceeds.

    In *In re Rollings*, the Court of Appeals for the Fifth Circuit declared that "federal law governs the preliminary issue of what burden of proof applies" in a declaratory judgment action where the court's jurisdiction stems from a bankruptcy matter.[65] Under federal law, the burden of proof on a declaratory judgment action is not governed by the positioning of parties as plaintiff or defendant, but rather a party's affirmative assertion on an issue.[66] By her contention that she has a compensable separate property interest in the Homestead Net Sale Proceeds, the Non-Filing Spouse asserts an affirmative claim. This assertion, coupled with her assumption of "the risk of nonpersuasion" by filing the declaratory judgment action, places the burden of proof

---

[65] *In re Rollings*, 451 Fed. Appx. 340, 345 (5th Cir. 2011); *see also In re Willcox*, 329 B.R. 554, 562 (Bankr. D. S.C. 2005), *rev'd on other grounds*, 467 F.3d 409 (4th Cir. 2006) (determining burden of proof under federal law in declaratory judgment action arising from property dispute related to administration of bankruptcy estate); *In re Big V Holding Corp.*, 267 B.R. 71, 90-91 (Bankr. D. Del. 2001) (holding that plaintiff bore burden of proof under federal law on declaratory judgment action where state law governed underlying issue of contract interpretation).

[66] *In re Rollings*, 451 Fed. at 345-46, *citing Pacific Portland Cement Co. v. Food Machinery & Chemical Corp.*, 178 F.2d 541, 547 (9th Cir. 1949). Just as the Court of Appeals for the Fifth Circuit did in *In re Rollings*, the court here notes that Texas law would dictate the same result as federal law regarding the burden of proof on the Non-Filing Spouse's declaratory judgment action. 451 Fed. Appx., at n.4, *citing Harkins v. Crews*, 907 S.W.2d 51, 58 (Tex. App.—San Antonio 1995, writ denied) (declaring that the burden of proof in a declaratory judgment action is on the party who asserts an affirmative claim on the pleadings).

on the Non-Filing Spouse's shoulders as to the issue of property interests in the Homestead Net Sale Proceeds.[67]

Turning to the substantive issue, the court looks to state law to determine property rights unless federal law requires a different result.[68]  The Bankruptcy Code includes as property of the estate "[a]ll interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is–(A) under the sole, equal or joint management and control of the debtor; or (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable."[69]  It follows that proceeds derived from property of the estate are also included in a debtor's bankruptcy estate.[70]  The Homestead Net Sale Proceeds, thus, would initially be entirely property of the Estate, to the extent that, as of the Petition Date, the Texas Homestead was community property under the sole, equal or joint management and control of Debtor; however, to the extent that half of the Texas Homestead was the Non-Filing Spouse's separate property, then half of the Homestead Net Sale Proceeds would not come into the Estate.[71]

---

[67] *See In re Rollings*, 451 Fed. Appx., at 345-46, *quoting In re Willcox*, 329 B.R. at 562.  The court notes, as a technical matter, that Trustee also requested declaratory judgment.  However, when distilled to its essence, what Trustee genuinely, affirmatively seeks is relief on her fraudulent transfer claims.

[68] *Butner v. United States*, 440 U.S. 48, 55 (1979), *citing Lewis v. Manufacturers National Bank*, 364 U.S. 603, 609 (1961).

[69] 11 U.S.C.A. § 541(a)(2) (West 2015).

[70] 11 U.S.C.A. § 541(a)(6) (West 2015).

[71] Neither party has raised the issue of whether a portion of the Homestead Net Sale Proceeds come into the Estate on account of a joint liability of Debtor and the Non-Filing Spouse pursuant to § 541(a)(2)(B), and an independent review of the record in the Bankruptcy Case shows that no secured claim against the Texas Homestead identified in the Sale Motion or Sale Order remains unsatisfied.  The court, then, only considers the Estate's interests in the Texas Homestead under § 541(a)(2)(A).

As the Fifth Circuit explained in *In re Robertson*, the Bankruptcy Code does not define 'community property,' "…but [it] clearly is used as a term of art referring to that certain means of holding marital property in those states which have adopted a community property system."[72] Texas is in the minority of states that operates under a community property system; therefore, the court turns to the Texas community property scheme to determine the characterization of the Texas Homestead as of the Petition Date.[73]  Property is characterized under Texas law by "the rule of implied exclusion" – if an asset is not defined as separate property under the Texas Constitution, that asset is community property.[74]  The starting point for determining property characterization under this binary regime is to apply "the inception of title rule," which requires the court to consider the timing and circumstances surrounding acquisition of the property.[75] Under this analysis, the dates of the marriage and asset acquisition are significant; all property acquired by either or both spouses during the marriage is community property, unless characterized as separate property.[76]  Moreover, a presumption exists that all property possessed by either spouse during the marriage is community property, unless clear and convincing evidence proves its separate nature.[77]  Even if only one spouse holds title in his or her individual

---

[72] *In re Robertson*, 203 F.3d 855, 859 (5th Cir. 2000), *citing* 5 Collier on Bankruptcy, ¶ 541.13[1], 541-76, n.1 (15th ed. 1999).

[73] Tex. Const. art. XVI § 15 (2013); Tex. Fam. Code Ann. § 3.001 *et. seq.* (West 2015); *In re McCloy*, 296 F.3d 370, 373 (5th Cir. 2002).

[74] *Arnold v. Leonard*, 114 Tex. 535, 273 S.W. 799, 802 (1925); *see also* Thomas M. Featherson Jr., Mills Cox Professor of Law, Baylor University and John Dee Spicer, Allmand and Lee, PLLC, Marital Property Liability Issues and Property of the Bankruptcy Estate (What Comes In Under the Section 541(a)(2) Tent), 2010 Northern District of Texas Bankruptcy Bench/Bar Conference, Bankruptcy: In the Spotlight (May 14, 2010), *available online* at *www.baylor.edu/content/services/document.php/119405.pdf*.

[75] *Smith v. Buss*, 135 Tex. 566, 144 S.W.2d 529, 532 (1940).

[76] Tex Fam. Code Ann. § 3.002 (West 2015).

[77] Tex. Fam. Code Ann. § 3.003 (West 2015).  Separate property consists of property owned by a spouse prior to marriage, property acquired by a spouse during marriage by gift, devise, or descent, or recovery from personal

name to an asset acquired during marriage, that asset is presumed to be community property absent an express indication that the asset was conveyed as separate property.[78] Texas courts have described the rather ominous-sounding standard of "clear and convincing evidence" to overcome the presumption as falling somewhere between "preponderance" and "reasonable doubt."[79]

A spouse's community property interest in community property means that spouse has an undivided one-half interest in the asset.[80] As former Judge Leif Clark once described in an opinion regarding a Texas homestead in bankruptcy called *In re Wald,* Texas statute "does not explicitly state that a spouse's interest in community property is a one-half undivided beneficial interest in the whole," nevertheless "Texas case law makes that proposition clear."[81]

In addition to community or separate property characterization, the Texas community property scheme also imposes a second layer of distinction upon property—that related to management, control and disposition.[82] The issue of management, control and disposition of property under Texas law presents another mutually-exclusive system—if property is not subject

---

injuries sustained by a spouse during marriage, unless due to loss of earning capacity during marriage. Tex. Fam. Code Ann. § 3.001 (West 2015).

[78] See *Kahn v. Kahn*, 94 Tex. 114, 58 S.W. 825, 826 (1900) (holding that the community property presumption during marriage can be overcome by deed recitals declaring an intent to convey to spouse's separate property); *Robles v. Robles*, 965 S.W.2d 605, 616 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (presuming real property to be community property where deed executed during marriage did not state conveyance to separate property).

[79] *Faram v. Gervitz-Faram*, 895 S.W.2d 839 (Tex. App.—Ft. Worth 1995, no writ).

[80] *Estate of Johnson v. Commissioner of Internal Revenue*, 718 F.2d 1303, at n. 17 (5th Cir. 1983); *see also In re Wald*, No. 11-53644, 2012 WL 2049429, at *2-3 (Bankr. W.D. Tex. June 6, 2012). This is true so long as the community property characterization persists; an unequal division of community property may occur upon divorce. Tex. Fam. Code Ann. § 7.001 (West 2015).

[81] *In re Wald*, 2012 WL 2049429, at *2, *citing United States v. Tischendorf*, 2011 U.S. Dist. LEXIS 63715, at *4, 2011 WL 2413346 (N.D. Tex. May 17, 2011); *Free v. Bland*, 369 U.S. 663, 664, 82 S. Ct. 1089, 8 L. Ed. 2d 180 (1962); *In re Norton*, 180 B.R. 168, 170 (Bankr. E.D. Tex. 1995).

[82] Tex. Fam. Code Ann. § 3.101 *et. seq*. (West 2015).

to both spouse's joint management, control and disposition, then it is subject to only one spouse's sole management, control and disposition.[83]   Community property is, accordingly, subject to the joint management, control and disposition of both spouses, unless it is community property that a spouse would have owned if single or unless both spouses provide otherwise by power of attorney in writing or other agreement.[84]   Community property that a spouse would have owned if single includes, but is not limited to personal earnings, revenue from separate property, personal injury recoveries, and revenue or increase due to a property subject to a spouse's sole management, control and disposition.[85]   If community property is held in only one spouse's name, as shown by contract, deposit of funds or other evidence of ownership, it is presumably subject to that spouse's sole management, control and disposition.[86]   Possession of or residence on property is, however, at a minimum evidence of management, control and disposition, and at a maximum determinative.[87]   In common parlance, community property

---

[83] *Compare* Tex. Fam. Code Ann. § 3.102(a) (West 2015) ("During marriage, each spouse has the sole management, control, and disposition of the community property that the spouse would have owned if single…"), *with* Tex. Fam. Code Ann. § 3.102(c) (west 2015) ("Except as provided by Subsection (a), community property is subject to the joint management, control and disposition of the spouses unless the spouses provide otherwise by power of attorney in writing or other agreement."), *and* Tex. Fam. Code Ann. § 3.101 (West 2015) ("Each spouse has the sole management, control, and disposition of that spouse's separate property.").

[84] Tex. Fam. Code Ann. § 3.102 (West 2015).

[85] Tex. Fam. Code § 3.102(a) (West 2015); *see generally, Montemayor v. Ortiz*, 208 S.W.3d 627 (Tex. App.—Corpus Christi 2006, review denied).

[86] Tex. Fam. Code Ann. § 3.104 (West 2015).

[87] *See Sweeney v. State*, 84 Tex. Crim. 58, 205 S.W. 335, 335-36 (Tex. Crim. App. 1918) (considering possession of vehicle and garage in which it was stored in determining whether vehicle was subject to sole or joint management, control and disposition of defendant); *In re Wald*, 2012 WL 2049429, at *3 (stating that bankruptcy debtor's continued residence on real property, by definition, characterized it as property subject to either his sole or joint management, control and disposition).

subject to a spouse's sole management, control and disposition is often referred-to as "special community property."[88]

Here, it is undisputed that the Non-Filing Spouse and Debtor acquired and possessed the Texas Homestead during their marriage.[89] Debtor and the Non-Filing Spouse married in 2007 and acquired the Texas Homestead in late 2012.[90] The Non-Filing Spouse makes no assertion and has offered no evidence, other than the Partition Agreement, to overcome the presumption under Texas law that the Texas Homestead was community property. Aside from the Partition Agreement, neither party alleges, nor does any evidence on the record support a finding, that the Texas Homestead was subject to the *sole* management, control and disposition of the ***Non-Filing Spouse*** on the Petition Date. In fact, the only evidence offered on this issue belies this conclusion and weighs in favor of finding either *joint* or ***Debtor's sole*** management, control and disposition—Debtor alone was contractually indebted under the mortgages secured by the Texas Homestead Liens and both Debtor and the Non-Filing Spouse resided in the Texas Homestead together.[91] The evidence shows that, under Texas law, as of the commencement of the Bankruptcy Case, the Texas Homestead was community property, subject to either the joint management, control and disposition of both Debtor and the Non-Filing Spouse or Debtor's sole management, control and disposition—unless the Partition Agreement is valid, enforceable and not avoided.[92]

---

[88] *See e.g.*, *Patel v. Kuciemba*, 82 S.W.3d 589 (Tex. Civ. App.—Corpus Christi, 2002 pet. denied).

[89] *See* Joint Pretrial Order [DE # 19 in AP], p. 4; Trustee's Trial Exhibit # 1, p. 1 and Plaintiff's Trial Exhibit # 1, p. 1.

[90] *Id.*

[91] *See* Trustee's Trial Exhibit # 11; Joint Pretrial Order [DE # 19 in AP], p. 4.

[92] The court need not determine whether the Homestead was subject to the spouse's *joint* or ***Debtor's sole management, control and disposition***, because the resulting property interests in the Homestead Net Sale Proceeds

The Non-Filing Spouse contends that the Partition Agreement was, in fact, valid and enforceable, and that its effect was to partition and recharacterize the Texas Homestead equally into one-half Debtor's separate property and one-half the Non-Filing Spouse's separate property. The Non-Filing Spouse further argues that it should not be avoided because the Texas Constitution expressly allows spouses to "…by written instrument from time to time partition between themselves all or part of their property…" into the separate property of both or either spouse, if done so "without the intention to **defraud**[93] preexisting creditors (emphasis added)."[94] The Texas Family Code provides further statutory authority and parameters for marital partition agreements.[95] Because creditors cannot reach a spouse's separate property to satisfy the other spouse's liabilities, unless otherwise provided by law, notice of partition is required as to creditors.[96] Constructive notice of a partition of community real estate into separate real estate can be given by recording the partition agreement in the records of the county in which the real

---

is the same regardless. 11 U.S.C. § 541(b)(2)(A). On one hand, § 541(b)(2)(A) includes property subject to the spouses' joint and Debtor's sole management, control and disposition as property of the Estate. On the other hand, a spouse's power to management, control and dispose of community property does not negate the other spouse's one-half undivided interest therein. *In re Ward*, No. 11-53644, 2012 WL 2049429, at *2, *citing United States v. Tischendorf*, 2011 U.S. Dist. LEXIS 63715, at *4, 2011 WL 2413346 (N.D. Tex. May 17, 2011); *Free v. Bland*, 369 U.S. 663, 664, 82 S. Ct. 1089, 8 L. Ed. 2d 180 (1962); *In re Norton*, 180 B.R. 168, 170 (Bankr. E.D. Tex. 1995).

[93] The court does not inquire into whether the Debtor had an intention to **defraud** preexisting creditors here, as Trustee has not asserted a claim for actual intent to **defraud** creditors under either § 548(a)(1)(A), or under § 544(b)(1) and this provision of the Texas Constitution, or under any other law for that matter. Rather, as later explained, Trustee merely argues an intention to **hinder** and **delay** preexisting creditors.

[94] Tex. Const. Art. XVI § 15 (2013). Interestingly, this express authorization of marital partition agreements was the direct result of the Texas Supreme Court in *King v. Bruce*, according to the provision's interpretive commentary. *See* Tex. Const. Art. XVI § 15, Interpretive Commentary (Vernon's Ann. 1993 Main Volume), *citing generally King v. Bruce*, 145 Tex. 647, 201 S.W.2d 803, 171 A.L.R. 1328 (1947). In that case, the court held that a contract that attempted to partition property through a bank deposit, series of withdrawals and subsequent transfer between spouses was void as against public policy. *King*, 145 Tex. 647.

[95] Tex. Fam. Code Ann. § 4.001 *et. seq.* (West 2015).

[96] Tex. Fam. Code Ann. § 3.202(a) (West 2015). The separate property of a spouse can be used to satisfy the other spouse's right of reimbursement/offset upon dissolution of the marriage or the death of a spouse. Tex. Fam. Code § 3.402 (West 2015) *et. seq.*; *Heggen v. Pemelton*, 836 S.W.2d 145, 146 (Tex. 1992). This provision appears to have no relevance in the case at bar.

estate is located.[97]  The general effect, therefore, of the recordation of a marital partition agreement under Texas law is to shield the partitioned separate real property from the reach of creditors seeking to satisfy the other spouse's liabilities.  This result of protecting a non-debtor spouse's partitioned separate property from creditors is the same under the Bankruptcy Code—as the Fifth Circuit, in agreement with the majority of courts has held, "…community property which has been divided and reclassified as separate property by State law … " before the commencement of a bankruptcy case is not property of a debtor's bankruptcy estate.[98]

Here, it is stipulated and the record establishes that the Partition Agreement was a properly executed written agreement that was recorded in the Dallas County, Texas real property records on July 29, 2013.[99]  The effect of the Partition Agreement was to partition the Texas Homestead equally into Debtor and the Non-Filing Spouse's separate property under Texas law, and to grant each spouse sole management, control and disposition over their separate portion.[100]  If the court upholds the Partition Agreement, both Debtor and the Non-Filing Spouse had a separate property interest in half of the Texas Homestead as of the Petition Date.[101]  The Estate would have had no interest in half of the Texas Homestead at the commencement of the Bankruptcy Case, on account of the Non-Filing Spouse's separate property interest therein, and accordingly, no interest in half of the Homestead Net Sale Proceeds.  Under these same terms, if enforced, Debtor would have had an equal separate property interest in the Texas Homestead as

---

[97] Tex. Fam. Code Ann. § 3.004 (West 2015); Tex. Fam. Code Ann. § 4.106(b) (West 2015).

[98] *In re Robertson*, 203 F.3d at 861.

[99] *See* Joint Pretrial Order [DE # 19 in AP], p. 4; Trustee's Trial Exhibit # 1 and Plaintiff's Trial Exhibit # 1.

[100] *See id.*

[101] *See id.*

of the Petition Date that became property of the Estate.[102]   The Estate would, therefore, be entitled to the remaining half of the Homestead Net Sale Proceeds, subject to Debtor's exempt interest pursuant to section 522(p) that has already been determined by order of this court.[103]

Notwithstanding the arguments of the Non-Filing Spouse and the permissibility in Texas of marital partition agreements generally, such agreements can nevertheless be subject sometimes to avoidance under federal as well as Texas law.[104]   The effect of avoidance is to void the affected transfer.[105]   If the partition of the Texas Homestead is void, the parties' property interests are restored to those pre-partition.   Therefore, if the effects of the Partition Agreement are avoided based on one or both of Trustee's claims, then the Texas Homestead in its *entirety* became property of the Estate on the Petition Date, despite the Non-Filing Spouse's one-half

---

[102] *See* 11 U.S.C. § 541(a)(1) (2012).

[103] *See* Trustee's Trial Exhibit # 8 and Plaintiff's Trial Exhibit # 4 [DE # 138 in Bankruptcy Case], and [DE # 178 in Bankruptcy Case].   The Partition Agreement also grants each spouse sole management, control and disposition over his or her separate property interest in the Texas Homestead.   The court does not need to determine the effect of enforcing these Management Terms, while at the same time voiding the Partitioning Terms, which hypothetically could be considered a separate fraudulent transfer inquiry, although both provisions are under the Partition Agreement, because a plain reading of the agreement shows that the Management Terms only apply to and are contingent upon the separate property interests created by the Partitioning Terms.   Simply put, if the Partitioning Terms are not upheld, then the Management Terms have no effect.   On the other hand, if the court enforces both the Management Terms and Partitioning Terms, the Management Terms do not grant the Non-Filing Spouse or the Estate any greater or lesser interest in the Homestead Net Sale Proceeds than the one-half of the Homestead Net Sale Proceeds attributed to each party's separate property interest on account of the Partitioning Terms.   Both roads lead to Rome, under the Partition Agreement—an entitlement to an equal one-half of the Homestead Net Sale Proceeds for each party.

[104] *See generally, In re Hinsley*, 201 F.3d 638 (5th Cir. 2000) (upholding bankruptcy court's avoidance of debtor and non-debtor spouse's pre-bankruptcy community property partition agreement under § 544(b), in reliance on TUFTA); *see also U.S. v. Loftis*, 607 F.3d 173 (5th Cir. 2010) (affirming trial court's avoidance of husband and wife's community property partition agreement as fraudulent conveyance under Federal Debt Collection Procedures Act).

[105] *In re Figearo*, 79 B.R. 914, 918 (Bankr. D. Nev. 1987).

undivided *community* property interest therein.  The result would be that the Estate is entitled to the full balance of the Homestead Net Sale Proceeds.[106]

### B. Did the Partition Agreement Constitute a Voidable, Fraudulent Transfer Under 11 U.S.C. § 548(a)(1)(A) of the Bankruptcy Code?

For Trustee to prevail under section 548(a)(1)(A), Trustee must show by a preponderance of the evidence that Debtor effected a *transfer* of his *interest in property* by entering into the Partition Agreement and that he did so with the requisite intent.[107]  Specifically, section 548(a)(1)(A) of the Bankruptcy Code allows a trustee to "avoid any transfer … of an interest of the debtor in property, or any obligation … incurred by the debtor that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily – (A) made such transfer … with actual intent to hinder, delay or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted …."[108]  Thus, the court must first analyze whether a "transfer" of an "interest of the debtor in property" occurred by virtue of the Partition Agreement.

### 1. Did the Partition Agreement effect a "transfer of debtor's property or interest in property" under 11 U.S.C. § 548(a)(1)(A) of the Bankruptcy Code?

The Non-Filing Spouse asks the court to determine that the Partition Agreement did *not* effect a "transfer" of a property interest of Debtor under the Bankruptcy Code, and therefore, is

---

[106] Subject to the Non-Filing Spouse's possible rights to some compensation therefrom, pursuant to a §363(j) request and *In re Kim*—as later discussed herein.

[107] In *Grogan v. Garner*, the U.S. Supreme Court decided that the preponderance standard, rather than the clear and convincing standard, is proper in non-dischargeability actions.  498 U.S. 279, 286-87, 111 S. Ct. 654, 659-60, 112 L. Ed. 2d 755 (1991).  Although the Fifth Circuit has not ruled upon the application of this holding in *Grogan* to actual fraudulent transfers under 11 U.S.C. § 548(a)(1)(A) specifically, it recently noted an increasing trend to apply the preponderance standard in this context.  *See Heartland Federal Savings & Loan Ass'n v. Briscoe Enterprises, Ltd., II*, 994 F.2d 1160, 1164–65 (5th Cir. 1993), *cert. denied,* 510 U.S. 992, 114 S. Ct. 550, 126 L. Ed.2d 451 (1993).  The court here takes direction from the holding in *Grogan*.

[108] 11 U.S.C. 548(a)(1)(A) (2012).

*not* subject to avoidance. She contends that the effect of the Partition Agreement was transformation of the Texas Homestead from community to separate property, subject to each spouse's sole management, control and disposition—essentially, a *mere re-characterization*, which impliedly does not constitute a "transfer." In support of this position, the Non-Filing Spouse cites a multitude of Texas cases holding that a partition of jointly-owned or community property does not transfer or convey *title* or divest either owner of *title*.[109] The court does not find this case law dispositive.

First, for purposes of 11 U.S.C. § 548, "'[w]hat constitutes a transfer'… is a matter of federal law," not state law.[110] The Bankruptcy Code's definition of "transfer" is "*extremely broad*" and includes, among other things, "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property."[111] In interpreting the predecessor of section 101(54), the United States Supreme

---

[109] *Citing Cameron v. Cameron*, 641 S.W.2d 210, 215 (Tex. 1982) (holding that a division of community does not divest either owner of title, but rather dissolves the tenancy in common); *Hailey v. Hailey*, 331 S.W.2d 299, 303 (Tex. 1960) (stating that partition of jointly-owned property does not divest either owner of title nor is it deemed a transfer or conveyance of title); *Hamilton v. Hamilton*, 154 Tex. 511, 520, 280 S.W.2d 588, 593 (1944) (reiterating that a partition deed does not transfer or convey title but divides the property so as to give each owner the share which he already owned by virtue of a prior deed or conveyance); *Houston Oil Co. of Texas v. Kirkindall*, 145 S.W.2d 1074, 1077 (Tex. 1941) (stating that partition does not operate as a conveyance or transfer of title); *Zapatero v. Canales*, 730 S.W.2d 111, 115 (Tex. App.—San Antonio 1987, writ ref'd n.r.e.) (holding that a partition deed does not transfer or convey title); *Garza v. Cavazos*, 213 S.W.2d 758, 760 (Tex. Civ. App.—San Antonio 1948), *aff'd in part, rev'd in part*, 148 Tex. 138, 221 S.W.2d 549 (1949) (stating that partition of property does not operate as a transfer or conveyance of title); *Bruce v. Permian Royalty Co. No. 2*, 186 S.W.2d 686, 687 (Tex. Civ. App.—Galveston 1945, writ ref'd w.o.m.) (holding that a partition agreement severs undivided interests while leaving title wholly intact); *Hamill & Smith v. Ogden*, 163 S.W.2d 725, 728 (Tex. Civ. App.—Galveston 1942, no writ) (declaring that a deed of partition does not convey or confer title); *Hamilton v. Keller*, 148 S.W.2d 1011, 1014 (Tex. Civ. App.—Eastland 1941, no writ) ("A partition involves no transfer of title."); *Odstrcil v. Odstrcil*, 384 S.W.2d 403, 406 (Tex. Civ. App.—Houston 1964, writ dism'd) (stating that the law generally does not recognize a partition as operating as a conveyance or transfer of title); *Willard v. Shinn*, 01-96-00424-CV, 1998 WL 394322 (Tex. App.—Houston [1st Dist.] July 16, 1998, pet. denied) (declaring that a partition deed does not convey or transfer title).

[110] *Barnhill v. Johnson*, 503 U.S. 393, 397, 112 S. Ct. 1386, 118 L.Ed.2d 1389 (1992), *quoting McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369-70, 65 S. Ct. 405, 89 L. Ed. 305 (1945).

[111] 11 U.S.C. §101(54)(D) (2012); *Bernard v. Schaeffer (In re Bernard)*, 96 F.3d 1279, 1282 (9th Cir. 1996) ("'The definition of transfer is as broad as possible.'" (*quoting* S. Rep. No. 989, 95th Cong., 2d Sess. 27 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5813)).

Court declared that "transfer" under the Bankruptcy Code is "…used in its most comprehensive sense, and it is intended to include every means and manner by which property can pass from the ownership and possession of another…."[112]   Circuit courts have construed the Bankruptcy Code's definition of "transfer" to be so expansive as to include a state court's default judgment against debtors on their claims against a former business partner, and a debtor's irrevocable tax election to carryforward a net operating loss.[113]

Second, a transfer of "title" is not necessary for a "transfer" of an "interest of the debtor in property" to occur.  In fact, in the realm of marital property, numerous courts have held that a divorce decree dividing assets effects a "transfer" under the Bankruptcy Code.[114]   Likewise, and

---

[112] *Pine v. Chicago Title & Trust Co.*, 182 U.S 438, 444, 21 S. Ct. 906, 908, 45 L. Ed. 1171 (1901) (interpreting § 1(30) of the Bankruptcy Act).

[113] *See Besing v. Hawthorne*, 981 F.2d 1488, 1492-93 (5th Cir. 1998) (upholding a determination that a transfer occurred where a state court entered default judgment and dismissed with prejudice debtors' pre-bankruptcy claims due to debtors' discovery abuse); *In re Russell*, 927 F.2d 413, 417-19 (8th Cir. 1991) (reversing lower courts' determination that bankruptcy trustee could not avoid debtor's manipulation of the U.S. Tax Code to preclude tax benefit of net operating loss from accruing to bankruptcy estate and remanding on issue of intent).

[114] *See e.g., Britt v. Damson,* 334 F.2d 896, 902 (9th Cir.1964) (concluding that divorce decree's award of community property to debtor's spouse was transfer under former section 1(30) of the Bankruptcy Act), *cert. denied*, 379 U.S. 966, 85 S. Ct. 661, 13 L.Ed.2d 560 (1965); *In re Erlewine*, No. 01-01005, Order Granting Motion for Partial Summary Judgment On Issue of Whether Divorce Decree Effected a Transfer for Purposes of 11 U.S.C. § 548 [DE # 12] (Bankr. W.D. Tex. June 28, 2001) (determining that divorce decree unequally dividing community assets constituted "transfer" under Bankruptcy Code); *In re Williams*, 159 B.R. 648 (Bankr. D. R.I.1993) (determining that debtor's conveyance of substantially all assets in rush divorce on eve of bankruptcy was fraudulent transfer under § 548(a)(2)); *In re Wallace*, 66 B.R. 834, 842–43 (Bankr. E.D. Mo.1986) (avoiding divorce decree's disposal of debtor's one-half undivided interest in a homestead as a fraudulent transfer under § 548(a)(1)(B)); *In re Clausen*, 44 B.R. 41, 43–44 (Bankr. D. Minn. 1984) (denying debtor discharge on account of fraudulent transfer pursuant to § 727(a)(2)(A) where debtor's default in divorce proceedings resulted in award of entire homestead to spouse).  The bankruptcy court's order granting partial summary judgment on the issue of whether the divorce decree constituted a "transfer" in *In re Erlewine* subsequently went up on appeal to the Fifth Circuit, in consolidation with the appeal of other orders, but the parties agreed to the issue before it reached the Fifth Circuit. *See In re Erlewine*, 349 F.3d 205, at n.7 (5th Cir. 2003).  In *dicta*, the Fifth Circuit did state the following: "[w]hile we recognize that referring to the court's judgment as effecting a 'transfer' is perhaps counterintuitive, the Bankruptcy Code expansively defines 'transfer' as embracing 'every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.' 11 U.S.C. § 101(54) (2000).  As *Besing* pointed out, Congress intended the definition to be as broad as possible. 981 F.2d at 1492." *Id.*

more importantly, many courts, including the Court of Appeals for the Ninth Circuit, have held that a *marital partition agreement* can constitute a "transfer," as defined by the Bankruptcy Code.[115] Most relevant to this court is that the Fifth Circuit has upheld avoidance of a marital partition agreement on two precedential occasions, as being fraudulent as to preexisting creditors, although without addressing the specific issue of whether such an agreement can constitute a "transfer" for purposes of section 548 of the Bankruptcy Code or TUFTA.[116] The Fifth Circuit's holdings in these cases are, nevertheless, instructive here.

In *In re Hinsley*, the Fifth Circuit affirmed a bankruptcy court's determination that a series of marital partition agreements transforming certain community property into a non-debtor spouse's separate property prior to bankruptcy, should be avoided pursuant to section 544(b) and *the Texas Family Code § 4.106(a)*.[117] Section 544(b) of the Bankruptcy Code, of course, provides that a "Trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law."[118] Then, the other "applicable law" in *Hinsley*, was section 4.106(a) of the Texas Family Code, which provides that

---

[115] *See e.g.*, *In re Bledsoe*, 569 F.3d 1106, 1113 (9th Cir. 2009) ("It is indisputable that the partitioning of jointly owned property effects a transfer of property interests between the two parties."); *Feurerbacher v. Moser*, No. 4:11-cv-272, 2012 WL 1070138, at **2-3 (E.D. Tex. Mar. 29, 2012) (upholding bankruptcy court's conclusion of law that recordation of two agreements whereby debtor's community interest in non-homestead property became spouse's separate property effected a transfer of debtor's jointly managed community property interest in the non-homestead properties, in violation of § 548(a)(1)(A), § 548(a)(1)(B) and § 544(b) (applying TUFTA)); *In re Wallace*, 66 B.R. at 843 (determining that disposition of marital property may be an avoidable transfer under the Bankruptcy Code whether as a result of settlement agreement, property agreement or divorce decree); *In Re Lange*, 35 B.R. 579 (Bankr. E.D. Mo., 1983) (allowing bankruptcy trustee to avoid as fraudulent transfer marital property agreement whereby spouse received ownership of all marital real estate).

[116] *U.S. v. Loftis*, 607 F.3d 173 (5th Cir. 2010); *In re Hinsley*, 201 F.3d 638 (5th Cir. 2000). The Fifth Circuit additionally considered the validity of a bankruptcy order that it interpreted as partitioning community property into separate property on a separate occasion in the *In re Hinsley* matter, but this opinion is unpublished and not precedent except under the limited circumstances provided for under the Rules of the Fifth Circuit, which are inapplicable here. *See In re Hinsley*, 149 F.3d 1179, No. 97-20967, 1998 WL 414302 (5th Cir. July 15, 1998) (slip copy).

[117] *In re Hinsley*, 201 F.3d at 643-44.

[118] 11 U.S.C. § 544(b) (2012).

"[a] provision of a partition or exchange agreement made under this subchapter [of marital property agreement] is void with respect to the rights of a preexisting creditor whose rights are intended to be **defrauded** by it."[119]  Although the term "transfer" does not appear in section 4.106(a), the term does appear in section 544(b) of the Bankruptcy Code.  It is clear from the facts of *Hinsley* and the lack of discussion regarding any "obligation," that the basis for avoidance was *not* "any obligation incurred."[120]  By necessity then, the bankruptcy court below must have allowed avoidance of the marital partition agreement on the basis of a "transfer of an interest of the debtor in property."[121]  Although the Fifth Circuit did not address the issue of whether the marital partition agreements constituted "transfers" under the Bankruptcy Code, the Fifth Circuit did so by implication in its affirmance of the lower court's holding.[122]

The Fifth Circuit had second occasion to affirm a lower court's avoidance of a marital partition agreement in *U.S. v. Loftis*.[123]  The applicable law at issue in *U.S. v. Loftis* was a claim for fraudulent transfer under the **Federal Debt Collection Procedure Act** ("FDCPA") and not the Bankruptcy Code.[124]  In *Loftis*, as in *In re Hinsley*, the Fifth Circuit affirmed avoidance of an agreement executed under Texas law that partitioned certain community property into the spouses' separate property, but did not specifically anguish regarding whether the agreement was

---

[119] Tex. Fam. Code Ann. § 4.106(a) (West 2015) (emphasis added).

[120] *In re Hinsley*, 201 F.3d at 642-44.

[121] *Id.*

[122] *Id.* at 644.  In *dicta*, the Fifth Circuit referred to "partition" and "transfer" separately.  *Id.* ("…whether both spouses must intend to defraud creditors to void a transfer or partition.").  It would be overstating the case, however, for the court to infer from this statement that a "partition" cannot constitute a "transfer."

[123] *U.S. v. Loftis*, 607 F.3d 173, 176-77 (5th Cir. 2010).

[124] *Id.*  No party was in a bankruptcy case in *U.S. v. Loftis*; rather, the United States was pursuing collection from a defendant who had earlier been found guilty of fraud against the United States.

a "transfer" under applicable law.[125]    Rather, the Fifth Circuit, without fanfare, upheld the avoidance of the partition agreement, under 28 U.S.C. § 3304(b)(1)(B)(ii), which states that "…a transfer made or obligation incurred by a debtor is fraudulent…if the debtor makes the transfer or incurs the obligation…" with the requisite intent or for less than reasonably equivalent value.[126]    The term "transfer" is defined by the FDCPA as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset…."[127]    This definition of a "transfer" under the FDCPA differs from the Bankruptcy Code's definition of "transfer" in section 101(54), only in the use of the term "*asset*" as opposed to "*property*."[128]    As the Fifth Circuit held on appeal that the "partition agreement [was] clearly voidable" under the FDCPA, and a "transfer" was an essential element of the FDCPA claim, the Fifth Circuit impliedly affirmed the conclusion that the marital partition agreement was a "transfer."[129]

Based on the Bankruptcy Code's expansive definition of "transfer" and the case law described above, the court concludes that a marital partition agreement that re-characterizes community property as separate property can constitute a "transfer" under the Bankruptcy Code.

---

[125] *Id.*

[126] 28 U.S.C. § 3304(b)(1)(B)(ii) (2012).

[127] 28 U.S.C. § 3301(6) (2012).

[128] *Id.*; *see also* 28 U.S.C. § 3301(2) (2012).  One of the exceptions from inclusion in the term "*asset*" under the FDCPA is *property that is exempt under nonbankruptcy law*.  *U.S. v. Loftis* **did not happen to deal with exempt property**.  The court notes that the FDCPA defines the term "asset" the same way that TUFTA does in the TUFTA definition of "transfer."  This definition would be extremely relevant for purposes of Trustee's § 544 claim here, because property that is exempt under nonbankruptcy law is obviously involved in the case at bar.  In other words, while Trustee ultimately prevails here on her § 548 fraudulent transfer claim, § 544 and TUFTA present a higher hurdle in bankruptcy.  *See infra.* n. 130; s*ee also* TUFTA Ann. § 24.002(2), (12) (West 2015).

[129] *U.S. v. Loftis*, 607 F.3d at 176; *see also* 28 U.S.C. § 3304(b)(1)(B)(ii) (2012).

This is true even where the partition agreement is generated under Texas law and involves an exempt homestead.

But, the Non-Filing Spouse essentially argues that even if Federal law generally applies to what is or is not a "transfer" under section 548, and even if a marital partition agreement can, in some instances, be avoidable as a fraudulent transfer, when a partition involves a Texas homestead, a different result is required. She contends that the court must look to state law whenever a debtor's interests in property are involved, and that Texas law is clear that a homestead is a specially-treated non-exempt asset. The Non-Filing Spouse is certainly correct that Texas law is replete with special protections for a Texas homestead, even in the context of possible fraudulent transfers.[130] The Non-Filing Spouse is also correct that "[i]n the absence of any controlling federal law…'property' and 'interests in property' are creatures of state law."[131] But, in *Begier v. I.R.S.,* the United States Supreme Court gave some illuminating guidance on this point. It stated that "property of the debtor," which it noted as the predecessor language to and coextensive with "an interest of the debtor in property," for the purpose of avoidance of a preference under the Bankruptcy Code, is "…best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy

---

[130] For example, as alluded to in n. 128, *supra*, TUFTA, which Trustee relies upon for his § 544(b)(1) claim, does not apply to a debtor's disposal of or parting with property that is generally *exempt* under nonbankruptcy law. *See* Tex. Bus. & Comm. Code Ann. § 24.002 (12) (West 2015) (defining "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an *asset* or an interest in an *asset*…." (emphasis added)); *compare with* Tex. Bus. & Comm. Code Ann. § 24.002 (2)(B) (West 2015) (excluding "property to the extent it is generally exempt under nonbankruptcy law" from the definition of an "asset"). Because Trustee ultimately prevails in this Adversary Proceeding by avoiding the Partition Agreement under § 548(a)(1)(A), the court declines to address Trustee's avoidance claim under § 544(b)(1) and TUFTA. Were the court to consider Trustee's § 544(b)(1) claim, TUFTA's general exclusion of "property to the extent it is generally exempt under nonbankruptcy law" from avoidance would present a very tough hurdle, which Trustee could only overcome based on complex principles of federal preemption, that might or might not operate to elevate the homestead exemption limitation of § 522(p) ahead of TUFTA.

[131] *Barnhill*, 503 U.S. at 397.

proceedings."[132] The Fifth Circuit applied this analysis recently in the context of avoiding a fraudulent transfer under the Bankruptcy Code in *In re IFS Fin. Corp.*, stating that the "primary consideration" in determining "an interest of the debtor in property" for the purpose of avoidance was whether paying or transferring the property "…diminished the resources from which the debtor's creditors could have sought payment."[133] The court applies the reasoning of *Begier* and *IFS* here.

    As described above, Debtor undisputedly transformed his community property interest in the Texas Homestead into separate property (half-his and half-hers) *via* the Partition Agreement.[134] The court holds that this alone constituted a "transfer… of an interest of the debtor in property."[135] Under the Partition Agreement, half of the Texas Homestead was excluded from the Estate by virtue of it being the Non-Filing Spouse's separate property.[136] This half of the Texas Homestead, and therefore, the portion of the Homestead Net Sale Proceeds that would be attributable to it, would be unavailable to creditors as a result. In contrast, the entire Texas Homestead, and therefore, the full balance of the Homestead Net Sale Proceeds, after deduction of Debtor's section 522(p) cap, would have otherwise become property of the Estate

---

[132] *Begier v. I.R.S.*, 496 U.S. 53, 58 (1990).

[133] *In re IFS Fin. Corp.*, 669 F.3d 255, 263 (5th Cir. 2012), *quoting In re Maple Mortg., Inc.*, 81 F.3d 592, 595 (5th Cir. 1996).

[134] *See* Joint Pretrial Order [DE # 19 in AP], pp. 4-5; Trustee's Trial Exhibit at # 1 and Plaintiff's Trial Exhibit at # 1.

[135] 11 U.S.C. § 548(a)(1). Even the Non-Filing Spouse's testimony at the Trial showed that property interests were 'part[ed] with' by virtue of the Partition Agreement. The Non-Filing Spouse testified that by entering into the Partition Agreement, she knew that she was limiting her interest in the Homestead to 50% and giving up the possibility that she could be entitled to more. *See* FTR, 10/21/2014 at 10:13:19 through 10:13:47. This same 'giving up' must be acknowledged for Debtor as well—by entering into the Partition Agreement he limited his interest in the Homestead to 50% and gave up the possibility that he could be entitled to more. *See e.g., Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985) (holding that only community property is subject to division; a spouse cannot be divested of his or her separate property).

[136] *See* Joint Pretrial Order [DE # 19 in AP], pp. 4-5; Trustee's Trial Exhibit at # 1 and Plaintiff's Trial Exhibit at # 1.

by virtue of being communiry property in the Debtor's joint and/or sole management, control and disposition property. Under *Begier* and *IFS*, the Partition Agreement "diminished the resources from which the debtor's creditors could have sought payment" by the value of half of the Texas Homestead. It is well established under Texas law that property is considered to be a "bundle of rights," referring to the relationship between a person and a thing rather than the thing itself.[137] This "bundle" includes much more than **mere title**, it also encompasses the right to exclusive possession, use and enjoyment, management, transmissibility, liability for repayment of debts, residual rights on the reversion of others' ownership rights, and more.[138] The court need not perform an analysis of all the potential property interests held by Debtor to conclude that Debtor parted with an interest in property recognized under Texas law by entering into the Partition Agreement. As Trustee argued in her supplemental letter brief to the court after the Trial, by executing the Partition Agreement, Debtor relinquished his right to manage the entire community property estate.[139] In fact, the Managing Terms in the Partition Agreement make it expressly clear that Debtor no longer had the right to manage, control or dispose of half of the

---

[137] *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 382 (Tex. 2012). By way of illustration, an interest in community property is taxed differently than the same interest in separate property. *See Medaris v. U.S.*, 884 F.2d 832, 833 (5th Cir. 1989) (determining that the IRS could levy upon half of income of debtor's spouse because debtor had one-half undivided interest in spouse's income by virtue of Texas community property scheme); *see also* Thomas M. Featherson, Jr. and John Dee Spicer (explaining "[b]ecause each spouse only owns one-half of the community income, notwithstanding the rules of management, if the spouses file separate income tax returns, each spouse is to report one-half of his/her community income and one-half of the other spouse's community income, thereby becoming liable for the tax liability of one-half of the total community income.").

[138] *Evanston*, 370 S.W.3d at 383; *see also Kaiser Aetna v. United States*, 444 U.S. 164, 176, 100 S. Ct. 383, 62 L. Ed. 2d 332 (1979) (acknowledging the property rights of possession, use, transfer and exclusion); *United States v. Gen. Motors Corp.*, 323 U.S. 373, 378, 65 S. Ct. 357, 89 L. Ed. 311 (1945) (stating that key property rights include right to possess, use, transfer and exclude others); *Wyly's Estate v. C.I.R.*, 610 F.2d 1282, 1288 (5th Cir. 1980) ("...the fact that ownership is vested in a spouse does not mean that he or she will have any management powers over the property.").

[139] *See* [DE # 30 in AP], p. 1.

Texas Homestead by entering into the agreement.[140] As described above, the Partition Agreement transformed this half of the Texas Homestead from property subject to either Debtor's sole or joint management, control and disposition, to property subject to the Non-Filing Spouse's sole management, control and disposition.[141] From this relinquishment of management powers alone, Debtor disposed of or parted with an interest in property by entering into the Partition Agreement. Accordingly, Debtor's entry into the Partition Agreement constituted a "transfer" pursuant to section 548(a)(1).

### 2. Did Debtor Enter Into the Partition Agreement with Actual Intent to Hinder or Delay Creditors?

As noted earlier, Trustee does not argue that Debtor entered into the Partition Agreement with actual intent to *defraud* creditors. Rather, Trustee argues that Debtor entered into the Partition Agreement with an actual intent to "hinder" or "delay" creditors. As a threshold matter, the court acknowledges that the phrase "intent to hinder, delay, or defraud" found in section 548(a)(1)(A) is phrased in the disjunctive; therefore, "any one of the three states of mind is sufficient."[142] In addition to those courts construing this phrase to provide three alternative bases

---

[140] *See* Joint Pretrial Order [DE # 19 in AP], pp. 4-5; Trustee's Trial Exhibit # 1, p. 3 and Plaintiff's Trial Exhibit #1, p. 3.

[141] *See id.*

[142] *Feuerbacher*, 2012 WL 1070138, at *16, *citing In re Stanton*, 457 B.R. 80, 93–94 (Bankr. D. Nev. 2011) (stating that "…a showing of any one of the three requisite states of mind… is sufficient to establish the intent element."); *see also In re Bayou Group, LLC*, 396 B.R. 810 (Bankr. S.D.N.Y. 2008), *aff'd in part, rev'd in part, 439 B.R. 284* (S.D. N.Y. 2010) ("The malicious intent sufficient to support a cause of action is set forth in the disjunctive—a plaintiff may avoid the transfer where it was made with intent 'to hinder, delay, **or** defraud' (emphasis added)."); *In re Ste. Jan-Marie, Inc.*, 151 B.R. 984, (Bankr. S.D. Fla. 1993) ("The requisite elements to be proved in order to find a transfer voidable under § 548(a) are to be read disjunctively."); *cf. In re Bowyer*, 916 F.3d 1056, 1059 (5th Cir. 1990), *reversed on rehearing*, 932 F.2d 1100 (5th Cir. 1991). In *In re Bowyer*, the Fifth Circuit originally reversed the bankruptcy court's allowance of discharge, finding error in its failure to consider intent to "hinder" and intent to "delay" separate and apart from an intent to "defraud," and determining the evidence supported the conclusion that debtor indeed intended to "hinder" and "delay" creditors under 11 U.S.C. § 727(a)(2). 916 F.3d 1056, 1059 (5th Cir. 1990). On rehearing, the Fifth Circuit reversed this holding on the basis that the moving creditor had not raised the issue of debtor's intent to "hinder" and "delay" apart from an intent to "defraud" and regardless, that it owed more deference to the bankruptcy court and its legal conclusion that the disputed transaction constituted "legitimate pre-bankruptcy planning." 932 F.2d 1100, 1102-03 (5th Cir. 1991). This legal

in the context of section 548(a)(1)(A), an abundance of courts have also interpreted the same phrase appearing in section 727(a)(2)(A) to offer three separate grounds.[143] In keeping with a consistent interpretation of the Bankruptcy Code as a whole, the court finds these cases interpreting section 727(a)(2) to be "instructive guidance."[144]

The court is aware that interpreting the phrase "intent to hinder, delay, or defraud" as three alternatives is not without dispute. A number of courts have interpreted the phrase "intent to hinder, delay, or defraud" in the Bankruptcy Code to require fraudulent intent, despite acknowledging the disjunctive phraseology.[145] The majority of courts holding that the phrase "intent to hinder, delay, or defraud" constitutes a single test have cited back to the Elizabethan origins of the phrase and the historical common understanding in fraudulent conveyance law that actual fraud be involved.[146] The court finds this historical reasoning unconvincing in light of the "plain meaning" of the words, which the Supreme Court has cautioned "should be conclusive,

conclusion, supported by the record, precluded the determination that debtor acted with an intent to "hinder" or "delay." *Id.* The court does not read the court's subsequent opinion in *In re Bowyer* after rehearing to overturn its holding that an intent to "defraud" differs from an intent to "hinder" and an intent to "delay."

[143] *See e.g.*, *In re Bernard*, 96 F.3d 1279, 1281 (9th Cir. 1996) (denial of discharge under § 727(a)(2)(A) "need not rest on a finding of intent to *defraud.* Intent to hinder or delay is sufficient."); *In re Lobell*, 390 B.R. 206, 219 (Bankr. M.D. La. 2008) (holding that an intent to defraud is not necessary to prove to prevent a debtor's discharge; intent to hinder or delay creditors suffices); *In re Womble*, 289 B.R. 836, 853 (Bankr. N.D. Tex. 2003) (declaring that extrinsic evidence of intent must exist to prevent debtor's discharge, whether that evidence be of intent to hinder, or intent to delay or intent to defraud); *In re Bernier*, 282 B.R. 773, 780 (Bankr. D. Del. 2002) (stating that creditor must show either fraudulent intent or intent to hinder or delay); *In re Snell*, 240 B.R. 728, 730 (Bankr. S.D. Ohio 1999) (noting that fraud need not be proved under § 727(a)(2) so long as debtor's intent to hinder or delay was established)*; In re Boudrot*, 287 B.R. 582, 586 (Bankr. W.D. Ok. 2002) ("Because § 727(a)(2) is in the disjunctive, it is unnecessary ... to prove fraud so long as they can establish the debtor's intent to hinder or delay.").

[144] *In re Agnew*, 355 B.R. 276, 284 (Bankr. D. Kan. 2006), *citing In re Lacounte*, 342 B.R. 809, 814 (Bankr. D. Mont. 2005); *accord In re Maronde*, 332 B.R. 593, 599 (Bankr. D. Minn. 2005).

[145] *See e.g.*, *In re Addison*, 540 F.3d 805, 812–813 (8th Cir. 2008); *In re Wreyford*, 505 B.R. 47, 56 (Bankr. D. N.M. 2014); *In re Summit Place, LLC*, 298 B.R. 62, 70 (Bankr. W.D.N.C. 2002).

[146] *See In re Wreyford*, 505 B.R. at 56, citing *Coder v. Arts*, 213 U.S. 223, 242, 29 S. Ct. 436, 444, 53 L. Ed. 772 (1909) ("This form of expression [intent to hinder, delay, or defraud creditors] is familiar to the law of fraudulent conveyances, and was used at the common law, and in the statute of Elizabeth, and has always been held to require, in order to invalidate a conveyance, that there shall be actual fraud....").

except in cases where the literal interpretation produces a result demonstrably at odds with the intention of the drafters."[147]   As earlier stated, Trustee has only alleged in the pleadings that Debtor acted with actual intent to "hinder" or "delay" and during argument at the Trial expressly waived any assertion that Debtor acted with actual intent to "defraud."[148]   The court, therefore, considers only whether Debtor entered into the Partition Agreement with actual intent to "hinder" or "delay." [149]

The Bankruptcy Code does not define an intent to "hinder" or an intent to "delay."[150] According to the Oxford English Dictionary, the term "hinder" means to "keep back, delay;

---

[147] *United States v. Ron Pair Enterps., Inc,* 489 U.S. 235, 242, 29 S. Ct. 1026, 103 L. Ed. 2d 290 (1980).

[148] The Non-Filing Spouse did argue in her Trial Brief that "…Trustee cannot show that the partition of the Homestead was made in fraud of creditors as a matter of well-established Texas law," despite the fact that Trustee brought her avoidance claims only alleging an intent to "hinder" or "delay," as clarified at the Trial. *See* [DE # 21 in AP], p. 12.   While refusing to analyze Debtor's fraudulent intent here based on Trustee's pleadings, the court does indulge in briefly addressing this definitive legal argument asserted by the Non-Filing Spouse.  The Non-Filing Spouse relies upon a number of cases, primarily those from Texas and Florida that preclude a finding of fraudulent intent, or render intent moot, in the context of a transfer of a homestead or other marital property interest. *Id.*, *citing Crow v. First Nat. Bank*, 64 S.W.2d 377, 379 (Tex. Civ. App.—Waco 1933, writ ref'd); *Holt v. Abby*, 141 S.W. 173, 174 (Tex. Civ. App.—Amarillo 1911) (citing *King v. Harter*, 8 S.W. 308 (Tex. 1888)), amongst others.  The court notes that the basis for refusing to find fraud upon creditors in all of these cited cases was that the transferred interest in property was exempt from the reach of creditors—therefore, they were not deprived of any property that could satisfy their claims.  First, the court notes that these types of cases have been criticized in the bankruptcy context for asserting a 'no-harm, no foul' rule unsupported by statute. *In re Krouse*, 513 B.R. 598, 603 (Bankr. D. Kan. 2014).  Moreover, a significant portion of the Texas Homestead (and resulting Homestead Net Sale Proceeds)—while fully exempt under Texas law—was not going to be exempt pursuant to § 522(p) of the Bankruptcy Code in Debtor's bankruptcy if the Texas Homestead remained community property.  To be exact, only $155,675.00 of the Homestead Net Sale Proceeds, plus any amount payable to the Non-Filing Spouse pursuant to § 363(j) and *Kim* and *Thaw*, would be exempt or payable to the couple.  The Non-Filing Spouse's reference to the Seventh Circuit's holding in *In re Agnew* that intent to defraud cannot exist if property is exempt at the time of transfer is distinguishable, as the testimony presented at the Trial showed that Debtor executed the Partition Agreement **with and because of his awareness that the Homestead interest he was parting with would not be exempt when he filed bankruptcy less than one hour after the transfer**. *In re Agnew*, 818 F.2d 1284, 1290 (7th Cir. 1987).

[149] The court should note here what was mentioned earlier, that the Texas Constitution expressly allows spouses to partition their property, post-marriage, if done so "without the intention to **defraud** preexisting creditors (emphasis added)."  Tex. Const. Art. XVI § 15 (2013).  The Texas Family Code provides further statutory authority and parameters for marital partition agreements. Tex. Fam. Code Ann. § 4.001 *et. seq.* (West 2015).  Thus, while Texas law might set the bar higher (such that a partition agreement is enforceable as long as there was no outright intention to **defraud** creditors), in bankruptcy, in the context of a § 548(a)(2)(A) action, this court must consider the broader words and tools applicable to a bankruptcy trustee under that statute.

[150] *See generally*, 11 U.S.C. § 101 (2012).

impede; obstruct; prevent."[151]   It defines "delay" as "put off to a later time; postpone, defer."[152]

In keeping with this plain meaning, courts have held that a debtor acts with an intent to "hinder"

if he or she acts with "…an intent to impede or obstruct" creditors and an intent to "delay" if he

or she acts with "…an intent to slow or postpone creditors."[153]   Others have stated more

generally that in order to act with "intent to hinder or delay" is to "act improperly to make it

more difficult for a creditor to collect a debt."[154]   Whether a debtor acts with "actual intent to

hinder, delay, or defraud" is a fact-specific inquiry.[155]

   The court recognizes that, in application, an inquiry into an intent to "hinder" or "delay"

rarely differs from an inquiry into an intent to "defraud."[156]   Multiple courts have considered

"badges of fraud" in analyzing any one or all of the three alternative intents.[157]   "Badges of

fraud" are factors that the court looks to as circumstantial evidence of an intent, arguably to just

defraud, or also to hinder or delay, where actual intent is difficult to determine.[158]   The Fifth

---

[151] The New Shorter Oxford English Dictionary, Vol. 1 1236 (1993).

[152] *Id*. at 623.

[153] *In re Lobell*, 390 B.R. at 219, *quoting In re Boudrot*, 287 B.R. at 586.

[154] *In re Womble*, 289 B.R. at 854.

[155] *In re Dennis*, 330 F.3d 396, 701 (5th Cir. 2003).

[156] *See In re Oberst*, 91 B.R. 97, 101 (Bankr. C.D. Cal. 1988) (holding that the debtor would be denied a discharge based on a transfer with intent to hinder, delay, or defraud where she had transferred her one-half interest in her home "for the purpose of hindering her ex-spouse from collecting on the judgment."); *see also In re Snell*, 240 B.R. 728, 730–31 (Bankr. S.D. Oh. 1999) (denying the debtor's discharge on basis of transfer with intent to hinder, delay, or defraud where the debtor admitted one of his purposes in transferring assets was to place those assets beyond the reach of his creditors, even though the debtor claimed to be acting on advice of counsel).

[157] *See In re Lobell*, 390 B.R. at 219; *In re Womble*, 289 B.R. at 853; *But see In re Boudrot*, 287 B.R. at 585-87 (identifying "badges of fraud" for purposes of fraudulent intent, but separately identifying intent to "hinder or delay" as intent to "impede or obstruct" based on dictionary definitions.).   Despite identifying these separate legal inquiries for an intent to "defraud" as opposed to an intent to "hinder or delay," the bankruptcy court relied upon the same evidence to find all three intents. *In re Boudrot*, 287 B.R. at 587-88.

[158] *In re Chastant*, 873 F.2d 89, 91 (5th Cir. 1989).

Circuit has identified the following "badges of fraud" for purposes of actual fraudulent transfer under the Bankruptcy Code: 1) the lack or inadequacy of consideration; 2) the close familial or friendship relationship between the parties; 3) the retention of the possession, benefit or use of the subject property; 4) the financial condition of the debtor before and after the transaction; 5) financial difficulties or pendency or threat of suits by creditors after the incurring of debt; 6) general chronology of the events and transactions in inquiry.[159] The court here addresses briefly a matter of law as to only the first "badge of fraud," because the Non-Filing Spouse's interpretation of this first factor warrants correction here. The Non-Filing Spouse argues that Debtor received adequate consideration *via* the Partition Agreement because the partition transformed his one-half undivided community property interest in the Texas Homestead into a separate property interest in the Texas Homestead. This argument is flawed. "The value of consideration given for a transfer alleged to be in fraud of creditors is determined from the standpoint of creditors."[160] The court therefore, looks to the value of property that was denied the Estate, by virtue of the Partition Agreement, in inquiring as to the adequacy of consideration for the transfer.

Here, Debtor testified as to his actual intent in entering the Partition Agreement, and this actual intent was corroborated by testimony of the Non-Filing Spouse and the couple's attorney.[161] An inquiry into circumstantial evidence regarding Debtor's actual intent is, therefore, largely unnecessary. Regardless, the court reaches the same result, whether it

---

[159] *Id.*

[160] *In re Hinsley*, 201 F.3d at 643, *citing In re Viscount Air Svcs.*, 232 B.R. 416, 434 (Bankr. D. Ariz. 1998); *In re Dondi Fin. Corp.*, 119 B.R. 106, 109 (Bankr. N.D. Tex. 1990) (interpreting similar provision of Texas Uniform Fraudulent Conveyance Act, the precursor of TUFTA); *see also Janvey v. Golf Channel*, No. 13-11305, 2015 WL 1058022, at *3-5 (5th Cir. 2015).

[161] *See* FTR, 10/21/2014 at 10:15:56 through 10:17:13, 10:21:47 through 10:24:00, 10:31:05 through 10:32:12, 10:34:25 through 10:35:12, 10:37:15 through 10:37:45.

considers the evidence in light of the "badges of fraud," direct testimony of actual intent, or based on the plain meaning of intent to "hinder" or "delay" as an intent to "impede" or "obstruct" creditors. ***Debtor's sole actual intent in entering the Partition Agreement was to avoid the effect of the limitation placed on his homestead exemption by section 522(p) of the Bankruptcy Code***.[162] Debtor, the Non-Filing Spouse, and their attorney testified that the three of them discussed this exemption cap during consultations regarding bankruptcy.[163] The three then strategized how to circumvent this limitation[164] imposed by Congress upon a debtor in precisely the circumstances involved here—one who had purchased within 1,215 days of filing bankruptcy a homestead in excess of a capped amount. These discussions occurred at a time when the Texas Homestead, which Debtor and the Non-Filing Spouse purchased as an investment,[165] was being marketed by a realtor for a listing of $3.99 million.[166] Debtor was aware of the various Homestead Liens at this time and believed them to amount to approximately $2.7 million at the time of the listing.[167] All parties also testified that Debtor anticipated making a profit from the sale.[168] Against this backdrop, the option of having the Non-Filing Spouse file bankruptcy along with the Debtor, in order to double the capped exemption amount under section 522(p), was

---

[162] *See id.*

[163] *See* FTR, 10/21/2014 at 10:16:18 through 10:17:13, 10:26:20 through 10:23:15, 10:26:03 through 10:26:50; 10:36:34 through 10:37:42.

[164] *See* FTR, 10/21/2014 at 10:15:56 through 10:17:13, 10:10:34:05 through 10:21:52 through 10:23:16, 10:25:08 through 10:27:09, 10:29:33 through 10:32:13, 10:34:06 through 10:35:12.

[165] *See* FTR, 10/21/2014 at 10:21:28 through 10:21:45.

[166] *See* FTR, 10/21/2014 at 10:19:16 through 10:20:43, 10:26:52 through 10:27:10; Trustee's Trial Exhibit # 5 [DE # 16 in Bankruptcy Case], Exhibit C attached thereto.

[167] *See* FTR, 10/21/2014 at 10:27:12 through 10:27:46.

[168] *See* FTR, 10/21/2014 at 10:21:07 through 10:21:43, 10:27:48 through 10:28:32, 10:37:45 through 10:38:13.

discussed.[169]  The Non-Filing Spouse testified that this option was disregarded in favor of the Partition Agreement,[170] because the Partition Agreement was expected to preserve more of the Texas Homestead for her and the couple's children.[171]

While acknowledging Debtor's testimony that he entered into the Partition Agreement because he felt obligated to provide for his family,[172] the court is struck by the nature of the strategic considerations that occurred[173] under circumstances where Debtor had an asset, the sale of which might provide substantial equity, at a time when he was considering, and indeed then

---

[169] 11 U.S.C. § 522 (m).  *See* FTR, 10/21/2014 at 10:16:18 through 10:17:13; 10:22:26 through 10:23:16; 10:25:08 through 10:26:50; 10:37:37 through 10:37:44.

[170] *See* FTR, 10/21/2014 at 10:16:18 through 10:17:13, 10:21:52 through 10:22:16; 10:37:37 through 10:37:44.

[171] Although the parties did not raise this issue, the court has been perplexed and pondered extensively what certain words appearing at the beginning of § 522(p) might mean and whether such words might have any relevance to Trustee's fraudulent transfer claims in the case at bar.  Specifically, the court refers to these highlighted words: "***Except as provided in . . . section 544 and 548*** . . . a debtor may not exempt any amount in interest that was acquired by the debtor during the 1,215-day period preceding the date of the filing of the petition that exceed in the aggregate $155,675 in value in" a homestead.  What does this cross-reference to §§ 544 and 548 in § 522(p) mean? This court has not been able to find any authority (no case law; no legislative history; no legal commentary) to provide a possible explanation.  This court concludes the language is either irrelevant to the case at bar or does not help the Non-Filing Spouse in any way.  In any event, the court has thought of one hypothetical that might explain it.

Hypothetical:  Assume a debtor acquires with nonexempt $500,000 cash a homestead within 1,215 days of filing bankruptcy.  In bankruptcy, post-BAPCPA, pursuant to § 522(p), the debtor would only be entitled to claim $155,675 as exempt.  Knowing this, and wanting to protect his $500,000 of equity, on the eve of bankruptcy, the debtor conveys the house to his brother-in-law, for $1, with actual intent to defraud, hinder, or delay his creditors. Trustee sues the brother-in-law pursuant to sections 544, 548, and 550, to avoid the transaction and recover the house.  Trustee is successful and brings the house into the bankruptcy estate.  Then, after the house is brought into the bankruptcy estate, the debtor amends his schedules to schedule the house and asserts a $155,675 homestead exemption in it, pursuant to § 522(p).  Section 522(g) would prevent that.  So, the clause at the beginning of § 522(p) is likely an acknowledgment of this reality–indicating that the debtor does not even get the $155,675 exemption on a homestead, in the situation where a trustee had to bring a fraudulent transfer action to even get the house back into the bankruptcy estate–although it would probably make more sense if the clause in § 522(p) mentioned § 522(g) and not § 544 and § 548.

[172] *See* FTR, 10/21/2014 at 10:31:28 through 10:34:54.

[173] *See* FTR, 10/21/2014 at 10:15:56 through 10:17:13, 10:10:34:05 through 10:21:52 through 10:23:16, 10:25:08 through 10:27:09, 10:29:33 through 10:32:13, 10:34:06 through 10:35:12.

decided, to file for bankruptcy.[174]  Even if attributing the most innocent and family-centric goals to Debtor, these discussions—revealed to the court under the rare circumstance of waiving attorney-client privilege—do not show a desire of Debtor to ensure that his family had a home (for they were selling it, and they had not even lived in it for a year).  Rather, the nature of the strategies involved show an intent of Debtor to divert from his creditors and preserve for his family *the maximum amount of cash possible*.  Semantics aside, Debtor's articulated intent to preserve for his family as much money as possible is the same as an intent to shield as much money as possible from creditors—creditors of whom Debtor was clearly aware at the time he entered into the Partition Agreement, because he had decided to file for bankruptcy.[175]  Events that occurred pre-bankruptcy involving the Debtor and his businesses have even evolved into multiple adversary proceedings filed by businesses and financial institutions against him for fraud, conspiracy, and numerous other multi-million dollar claims.[176] The court believes Debtor was well aware of these impending claims at the time he entered into the Partition Agreement. Finally, it is not insignificant to the court that Debtor and the Non-Filing Spouse are not estranged;[177] evidence on the record shows that Debtor could expect at the time of executing the Partitioning Agreement to benefit from the preservation of (or shielding of) the Homestead Net Sale Proceeds (whichever way one cares to see it), just as his family would.

---

[174] *See* FTR, 10/21/2014 at 10:19:16 through 10:20:43, 10:21:07 through 10:21:43, 10:26:52 through 10:27:10, 10:27:48 through 10:28:32, 10:37:45 through 10:38:13; Trustee's Trial Exhibit # 5 [DE # 16 in Bankruptcy Case], Exhibit C attached thereto.

[175] *See* FTR, 10/21/2014 at 10:12:52 through 10:13:04, 10:26:00 through 10:26:11.

[176] *See Park Place Motorcars, Ltd. d/b/a Park Place Motorcars Dallas, et. al. v. Jeremy Wiggains, et. al.* (*In re Wiggains*), No. 13-03170, filed Aug. 8, 2013 (Bankr. N.D. Tex.).

[177] *See* Joint Pretrial Report [DE # 19 in AP], p. 4.

Finally, Debtor's reliance upon his attorney's advice in entering into the Partition Agreement here[178] does not refute the conclusion that he acted with actual intent to "hinder" or "delay" his creditors. In fact, the advice of Debtor's attorney and Debtor's reliance thereon is further evidence that Debtor was well-informed of the legal ramifications of the strategy underlying the Partition Agreement and sought to obstruct his creditors from recovery, in full or in part, upon its execution. Execution of this strategy, and the Partition Agreement pursuant to it, went beyond mere conversion of property here—it showed gamesmanship for the purpose of placing reachable assets outside of creditors' reach. As a result of this strategy (if successful), creditors would be denied at least half of the Homestead Net Sale Proceeds—$284,334.21, in satisfaction of their claims. Allowing this type of pre-bankruptcy planning under the circumstances here "…would constitute a perversion of the purposes of the Bankruptcy Code."[179] The court, therefore, concludes that Trustee has proven that Debtor acted with the requisite intent under section 548(a)(1)(A). The Partition Agreement is voidable, pursuant to section 548 (a)(1)(A) and shall be avoided.[180]

### C. To What Extent Is Trustee Entitled to Retain the Homestead Net Sale Proceeds Under Section 550(a) of the Bankruptcy Code and to What Extent Is the Non-Filing Spouse Entitled to a Distribution?

Section 548(a) may alone provide sufficient remedy here—since it allows the Partition Agreement to be **avoided** and the court has ruled that it shall be. However, section 550 also provides a remedy for successful claims under section 548.[181] If a transfer is avoided under the

---

[178] *See* FTR, 10/21/2014 at 10:15:56 through 10:16:06, 10:15:08 through 10:26:00.

[179] *In re Reed*, 700 F.2d 990, 986 (5th Cir. 1983).

[180] To be clear, the court notes that Trustee has never argued that § 548(a)(1)(B)—constructive fraud—might be applicable in this case.

[181] *See In re IFS Fin. Corp.*, 669 F.3d 255, 261 (5th Cir. 2012).

Bankruptcy Code, the trustee may recover the property or its equivalent value from: "(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee."[182] In accordance with the court's findings and conclusions above, and with support from Debtor's own testimony, it is clear that Debtor parted with (and, thus, the Estate has been denied the benefit of, pursuant to section 541(a)(2)(A)) a community property interest in the Texas Homestead which was under Debtor's joint or sole management, control and disposition, which, by virtue of the Partition Agreement, was transformed into property that was one-half the Non-Filing Spouse's separate property (outside of the Estate). This was all for the Non-Filing Spouse's benefit.[183] Additionally, Debtor parted with his ability to manage, control and dispose of a one-half undivided community property interest in the Texas Homestead, thereby benefitting the Non-Filing Spouse by granting her sole power to manage, control and dispose of the separate property interest she gained in half of the Texas Homestead.[184] Section 550, therefore, allows Trustee to "recover" this one-half undivided community property interest in the Texas Homestead and bring it back under Trustee's (now stepping into the shoes of Debtor) management, control and disposition. This recovery eliminates the Non-Filing Spouse's separate property interest and sole management powers in and over half of the Texas Homestead. This results in Trustee's full retention of the Homestead Net Sale Proceeds, apart from the amount distributed to Debtor pursuant to the Homestead Exemption Orders. Based upon the foregoing, Trustee is entitled to this recovery in full, unless the court finds that the Non-Filing Spouse is entitled to a distribution due to her

---

[182] 11 U.S.C. § 550(a) (2012); *see also Spring St. Partners–IV, L.P. v. Lam*, 730 F.3d 427, 436 (5th Cir. 2013).

[183] *See* Joint Pretrial Order [DE #19 in AP], p. 4; Trustee's Trial Exhibit # 1, pp. 2-3 and Plaintiff's Trial # 1, pp. 2-3.

[184] *See* Joint Pretrial Order [DE # 19 in AP], pp. 4-5; Trustee's Trial Exhibit # 1, pp. 2-3 and Plaintiff's Trial # 1, pp. 2-3.

homestead legal interest in the Texas Homestead (separate and apart from her actual ownership interest) as of the Petition Date. A specific basis for a distribution to the Non-Filing Spouse other than the Partition Agreement was not raised in the pleadings,[185] but the court addresses this, in light of recent opinions from the Fifth Circuit on the issue.

### D. What About *In re Kim*, *In re Thaw*, *and Section 363(j)?*

Pursuant to the Fifth Circuit's recent rulings regarding a non-debtor spouse's legal interest in a homestead that is subject to a bankruptcy case in *In re Thaw* and *In re Kim*, the Non-Filing Spouse is not entitled to compensation for loss of her homestead interest or interest in a state homestead exemption on account of a "taking" under the Fifth Amendment to the United States Constitution.[186] This is based on the principle articulated by the U.S. Supreme Court in *United States v. Rodgers*; "…[w]hen a federal statute permits a person's property to become liable for the debts of another, a Takings Clause objection [cannot] be successfully interposed if the property interest 'came into being after enactment of the provision.'"[187] It is undisputed here that the Non-Filing Spouse and Debtor acquired the Texas Homestead on or about November 27, 2012;[188] several years after enactment of section 522(p) of the Bankruptcy Code in 2005. As the Fifth Circuit signified in *In re Kim,* when addressing a non-debtor spouse's homestead interest acquired prior to enactment of section 522(p), and then clarified in *In re Thaw,* when addressing

---

[185] Counsel noted in oral argument that this issue would likely be presented next, in the event that the court held the Partition Agreement to be a fraudulent transfer. *See* FTR, 10/21/2014 at 10:05:56 through 10:07:45, 10:10:52:22 through 10:55:00, 11:01:38 through 11:04:18.

[186] *In re Thaw*, 769 F.3d at 369; *In re Kim*, 748 F.2d at 657.

[187] *In re Thaw* at 369, *citing In re Kim*, 748 F.2d at 657 (quoting *United States v. Rodgers*, 461 U.S. 677, 697 n. 24, 103 S. Ct. 2132, 76 L. Ed. 2d 236 (1983)).

[188] *See* Joint Pretrial Order [DE # 19 in AP], p. 4; Trustee's Trial Exhibit # 4; Trustee's Trial Exhibit # 8 and Plaintiff's Trial Exhibit # 4 [DE # 138 in the Bankruptcy Case], and [DE # 178 in the Bankruptcy Case]; FTR, 10/21/2014 at 10:13:50 through 10:14:05.

an interest obtained post-enactment, the fact that a homestead was acquired after BAPCPA is dispositive in precluding entitlement to just compensation for the loss of a homestead interest under the Takings Clause.[189] Note that further consideration under this rule may be required in certain cases—not this one—in order to determine whether a non-debtor spouse's loss was a "gratuitous confiscation" or "so unreasonable or onerous as to compel compensation."[190]

The Non-Filing Spouse has raised no argument nor offered any evidence here to suggest that the sale of the Texas Homestead and Trustee's retention of the balance of the Homestead Net Sale Proceeds is a gratuitous confiscation or rises to the level of being unreasonable or onerous. Indeed, in distinction from *In re Thaw* and *In re Kim*, Trustee here did not force the sale of the Texas Homestead;[191] Debtor and the Non-Filing Spouse marketed it prior to Debtor's decision to file for bankruptcy relief[192] and Debtor even improperly brought a motion to sell after the Petition Date,[193] which became moot after Trustee properly moved for the same relief.[194]

Moreover, the Bankruptcy Code does not afford a non-debtor spouse an additional homestead exemption, unless the non-debtor spouse jointly files for bankruptcy relief.[195]

---

[189] *In re Thaw*, 769 F.3d at 369-71; *In re Kim*, 748 F.2d at 657.

[190] *In re Thaw*, 769 F.3d at 370-71, *citing Rodgers*, 461 U.S. at 697 (admitting that a gratuitous confiscation of one's property interests for the satisfaction of another person's tax debt may present a challenge under the Due Process Clause of the Fifth Amendment); *Palazzolo v. Rhode Island*, 533 U.S. 606, 626, 121 S. Ct. 2448, 150 L. Ed. 2d 592 (2001) (refusing to accept as an absolute rule that a party cannot prevail on any claim based on a property interest acquired post-enactment, "no matter how extreme or unreasonable.").

[191] *See* Trustee's Trial Exhibit # 5 [DE # 16 in Bankruptcy Case] and Trustee's Trial Exhibit # 6 [DE # 56 in Bankruptcy Case].

[192] *See* FTR, 10/21/2014 at 10:19:16 through 10:20:43, 10:26:52 through 10:27:04; Trustee's Trial Exhibit # 5 [DE # 16 in Bankruptcy Case], Exhibit C attached thereto.

[193] *See* Trustee's Trial Exhibit # 5 [DE # 16 in Bankruptcy Case].

[194] *See* Trustee's Trial Exhibit # 6 [DE # 56 in Bankruptcy Case].

[195] *See generally*, 11 U.S.C.A. § 522 (West 2015); *see specifically* 11 U.S.C.A. § 522(m) (West 2015) (applying the allowance of state exemptions separately to a joint debtor).

However, the Fifth Circuit has suggested that the Bankruptcy Code may provide a mechanism for a non-debtor spouse to demand from the trustee some distribution of the proceeds of the sale of a homestead, *to compensate her legal interests, pursuant to section 363(j)*. As declared by the Fifth Circuit in *In re Kim*, "[h]omestead rights have *some value to a spouse*, separate and apart from an ownership interest in the real property on which homestead rights are impressed."[196] This point was reiterated in *In re Thaw*.[197] Collectively, these two cases instruct that a homestead designation creates a "legal interest" and *one who possesses a property as a homestead* (*even if not a fee simple holder*) may be entitled to some compensation for being involuntarily deprived of it. While stating that the homestead designation/right is a "legal interest" under Texas law, but not an "economic interest," the Fifth Circuit has nevertheless indicated that a non-filing spouse's homestead rights have "*some value to a spouse*, separate and apart from an ownership interest."[198]

Here, it would appear that the Non-Filing Spouse had a homestead interest (*i.e.,* an interest of some legal status, distinct from a fee simple interest), separate and apart from Debtor, of some value, that existed in the Texas Homestead on the Petition Date.[199] The question remains whether the Non-Filing Spouse will be entitled to some distribution from the balance of the Homestead Net Sale Proceeds, under section 363(j) of the Bankruptcy Code, on account of this homestead interest. Just as the Fifth Circuit did in *In re Kim*, this court notes that the parties

---

[196] *In re Kim*, 748 F.2d at 661 (emphasis in original).

[197] *In re Thaw*, 769 F.3d at 369-71.

[198] *In re Kim*, 748 F.2d at 661 (emphasis in original).

[199] *Id.* at 658.

have failed to address the applicability of section 363(j).[200]  When asked by the court whether they had briefed or were prepared to argue the Non-Filing Spouse's entitlement under this section of the Bankruptcy Code, the parties responded in the negative, other than the assertion of the Non-Filing Spouse's counsel that the Non-Filing Spouse would be entitled to the equivalent of a life estate based upon *In re Kim*, which allegedly, without evidence, would amount to as much as 95% of the balance of the Homestead Net Sale Proceeds.[201]  In following the Fifth Circuit's lead in both *In re Thaw* and *In re Kim*, the court refuses to rule upon this issue until it is properly raised.[202]  Yet, the court feels compelled to note that it disagrees with the interpretation of *In re Kim* put forth by the Non-Filing Spouse's counsel at the Trial.  In *dicta*, the Fifth Circuit in *In re Kim* stated that granting the same value to a homestead interest as to a life estate would seem to lead to overvaluation and it rejected an interpretation of Texas case law that would treat both the same.[203]  The court, likewise, doubts that the analogy to a life estate is strong enough to warrant a disbursement to the Non-Filing Spouse under section 363(j) that approaches 95% of the balance of the Homestead Net Sale Proceeds.

### E.  Is Trustee Entitled to Recover Reasonable Attorneys' Fees?

The court finds no basis for awarding attorneys' fees or costs to Trustee for prevailing on her claim under section 548(a)(1)(A) or section 550(a) or for defending against the Non-Filing Spouse's declaratory judgment cause of action.  In the United States, courts, of course, follow the "American Rule"—a prevailing party is not entitled to collect a reasonable attorneys' fee

---

[200] *Id.* at 663.

[201] *See* FTR, 10/21/2014 at 10:05:56 through 10:07:45, 10:10:52:22 through 10:55:00, 11:01:38 through 11:04:18.

[202] *In re Thaw*, 769 F.3d at 369; *In re Kim*, 748 F.3d at 663.

[203] *In re Kim*, 748 F.3d at 661-62.

from the losing party unless provided for by agreement or statute.[204]   Although a general exception to this rule exists that affords a court "equitable power … to make awards in addition to regular statutory costs…," exercise of this power is most often "limited to cases of bad faith, vexation, wantonness, or oppression relating to the filing or maintenance of the action …."[205]   A court's exercise of this inherent equitable power in such circumstances is punitive—for the purpose of issuing sanctions against litigations for bad faith conduct.[206]   This court has previously joined with many other courts in recognizing that this inherent equitable power synchronizes with the authority granted to bankruptcy courts under section 105 (a) to "issue any order, process, or judgment that is necessary to carry out the provisions of …" the Bankruptcy Code.[207]   The Fifth Circuit has declared that the type of bad faith conduct warranting an award of attorneys' fees as sanctions under a court's inherent powers must relate to the proceedings and not to the underlying facts that led to a party's claim.[208]

The applicable statutes here do not provide for recovery of costs or attorneys' fees. Under the Federal Declaratory Judgment Act (DJA) "… recovery of attorney's fees is confined to two situations: (i) where, under the restrictive American rule attorney's fees are allowed; and (ii) where controlling substantive law permits recovery."[209]   The two situations are one and the same here as the controlling substantive law is provided for under the Bankruptcy Code, which would be the only statutory basis for an award under the "American Rule."   Nowhere does the

---

[204] *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975).

[205] *Mercantile Nat. Bank at Dallas v. Bradford Trust Co.*, 850 F.2d 215, 218 (5th Cir. 1988).

[206] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46, 111 S. Ct. 2123, 115 L. Ed.2d 27 (1991).

[207] 11 U.S.C. § 105 (a) (2012); *In re Pastran*, 462 B.R. 201, 210 (Bankr. N. D. Tex. 2011).

[208] *Rogers v. Air Line Pilots Assoc., Int'l*, 988 F.2d 607, 615–16 (5th Cir. 1993).

[209] *Id.* at 216.

Bankruptcy Code provide a statutory basis for recovery of attorneys' fees or costs where a non-debtor spouse seeks declaratory judgment as to her interest in property that is claimed to belong to the Estate. Nor does the Bankruptcy Code award attorneys' fees or costs under section 548(a)(1)(A) or section 550(a). No evidence of "bad faith, vexation, wantonness, or oppression relating to the filing or maintenance" of the claims in this case exists that would warrant an exception to the "American Rule" and give the court grounds to make an award under the inherent powers afforded it by section 105(a) of the Bankruptcy Code. Accordingly, Trustee's request for attorneys' fees and costs is denied.

### F. Trustee's Section 544(b)(1) and TUFTA Fraudulent Transfer Claim.

Recall that Trustee additionally sought in this Adversary Proceeding to avoid the Partition Agreement as a transfer made by Debtor with actual intent to hinder or delay creditors, pursuant to section 24.005(a)(1) of TUFTA, which is available to Trustee pursuant to section 544(b)(1) of the Bankruptcy Code.[210] Section 544(b)(1), of course, permits a trustee to avoid any transfer of an interest in property that is "avoidable under applicable law by a creditor holding an unsecured claim."[211]

Because the court has found that the Partition Agreement should be avoided pursuant to section 548(a)(1)(A) of the Bankruptcy Code, the court declines to address whether section 544(b)(1) and TUFTA might be combined to provide additional grounds for avoidance. The court does note, however, that there are significant obstacles with TUFTA that do not exist with section 548(a)(2)(A). As earlier explained, the terms "transfer" and "property" are defined and

---

[210] 11 U.S.C. § 544(b)(1) (2012).

[211] *Id.*

-47-

interpreted broadly under federal law. But under section 24.005 of TUFTA,[212] which Trustee relies upon for his section 544(b)(1) claim, there is a special carve-out, of sorts, for situations in which a debtor has disposed of or parted with property that is generally exempt under nonbankruptcy law. Specifically, section 24.002(12) of TUFTA defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an *asset* or an interest in an *asset*...." (emphasis added). In other words, the term "asset" is used in defining a transfer, unlike the Bankruptcy Code which uses the term "property" when defining a transfer.[213] Further, section 24.002(2)(B) of TUFTA excludes "property to the extent it is generally exempt under nonbankruptcy law" from the definition of an "asset."[214] Thus, were the court to consider Trustee's section 544(b)(1) claim, the Texas Legislature's general exclusion of a homestead (*i.e.,* exempt property) from avoidance in TUFTA would seem to present an additional hurdle—if not outright bar—to Trustee's section 544(b) claim, unless this court could conclude that the homestead cap in section 522(p) and section 550(b), combined, operate in a way to federally preempt Texas congressional intent to protect homesteads from being the subject of fraudulent transfer actions.

In any event, the court sees no reason to reach this difficult issue. The Trustee is entitled to avoid the Partition Agreement pursuant to section 548(a)(1)(A).[215]

---

[212] Tex. Bus. & Com. Code Ann. § 24.005 (West 2015).

[213] 11 U.S.C. § 101(54)(D) (2012).

[214] Tex. Bus. & Com. Code Ann. § 24.002(2) (West 2015).

[215] The court does note that, if the Trustee were to have prevailed on his section 544(b) and TUFTA claim, there is an avenue to be awarded attorneys' fees. *See* Tex. Bus. & Com. Code Ann. § 24.013 (West 2015). Again, the court nevertheless declines to reach this issue of availability of TUFTA to avoid the Partition Agreement, when there is a clear and more direct path to avoidability under section 548(a)(1)(A).

V.      Conclusion

In summary, the court will recap its decision in this Adversary Proceeding, as follows:

1.      Before BAPCPA, a Texas debtor could shield all of the equity in his residence in his bankruptcy case. Period. The value and date of acquisition of the home were both irrelevant. His home could truly be his castle.

2.      Post-BAPCPA, a Texas debtor cannot shield an unlimited amount of home equity in a bankruptcy, if he acquired the residence within 1,215 days of filing the bankruptcy. In such a situation, he is limited to a $155,675 cap on his exempt equity.[216] 11 U.S.C. § 522(p).

3.      If a debtor is married and both spouses file bankruptcy, that cap can be doubled (in the case at bar, it would have been $311,350 (2 x $155,675)). 11 U.S.C. § 522(m).

4.      If only one spouse files bankruptcy, there is no doubling. However, in *In re Kim* and *In re Thaw* the Fifth Circuit has instructed that a non-filing spouse may be entitled to ***some compensation*** for her homestead legal interest (although such legal interest is not *per se* a vested economic interest). The Fifth Circuit has not given any guidance yet on how to calculate this compensation for a non-filing spouse's homestead legal interest–although it has indicated that section 363(j) is a likely mechanism for adjudication of this issue.

5.      By virtue of the Partition Agreement in the case at bar, the Non-Filing Spouse realized, on the eve of bankruptcy, a separate property interest in the actual fee simple of the Texas Homestead–which, if enforceable and not avoidable, would mean she would be entitled to one-half of the Homestead Net Sale Proceeds (*i.e.,* one-half of $568,668, which equals $284,334). This would be in addition to Debtor-spouse's $130,675, received on account of his

---

[216] As adjusted under 11 US.C. § 104, effective April 1, 2013. *See* 11 U.S.C.A. § 104 (West 2015).

homestead exemption (which he compromised down from $155,675), meaning an aggregate realization by the couple of approximately $415,000.

6.      Thus, if the Partition Agreement were enforced, the couple would come out significantly ahead of what they would have been entitled to pursuant to section 522(p), even if they had jointly filed bankruptcy and had not entered into the Partition Agreement (which would have been 2 x $155,675 = $311,350).

7.      Moreover, this court believes the Partition Agreement (if not avoided) would allow the couple to come out ahead of what they would have been legally entitled to pursuant to section § 363(j) if they did not jointly file (which they did not). The bankruptcy court must speculate a little on this point, since it has not yet been asked to do a section 363(j) calculation for the value of the Non-Filing Spouse's homestead legal interest. But the court believes the value will be under $284,334 (*i.e.,* one-half of the Homestead Net Sale Proceeds).

8.      Whether this decision is correct from both a policy and a morality standpoint is a tough call. On the one hand, this court believes Congress's intent behind section 522(p) was to address the so-called "mansion loophole"–which was mostly about curbing the perceived abusive situation of a person moving on the eve of bankruptcy to a state with more generous exemptions than his domicile, solely so he could take advantage of a different state's more debtor-friendly exemption laws. Here, this did not happen. Debtor and the Non-Filing Spouse had been in Texas for a long time. Moreover, it appears that there may have been market appreciation with regard to the Texas Homestead in the months leading up to bankruptcy, which was fortuitous for all concerned. The large equity in the Texas Homestead at the date of the bankruptcy filing was not the result of Debtor-scheming (although Debtor may have used

nonexempt funds to make improvements to the house that contributed to appreciation–the facts are not clear on this).

9.  On the other hand, Debtor and the Non-Filing Spouse made a critical decision based on advice of counsel: ***they decided that only one of them would file bankruptcy***.  They could have both filed bankruptcy and been able to double their section 522(p) cap.  This would have entitled them to $311,350–perhaps with no fight/litigation at all.  The fact that they entered into the Partition Agreement–with no reason or justification other than to shield half of the Homestead Net Sale Proceeds for the family (rather than both file bankruptcy without a partition agreement and realize a little less in net proceeds) can only be reasonably interpreted as an act done with intent to ***hinder*** and/or ***delay*** creditors.  Any agreement that is entered into by a debtor in the shadow of an imminent bankruptcy filing is almost always going to raise questions about the *bona fides* of the agreement.  Among those basic questions would be, "was there any business reason or other justification for entering into this agreement, other than to shield assets from creditors' reach?"  If not, then this would seem to equate to an intent to at least ***hinder*** and/or ***delay*** creditors.  Perhaps being open and honest about the facts and circumstances tends to tip the balance against making a finding that there was any "actual intent to defraud."  But the creation of an agreement with the motivation of protecting or shielding assets from creditors absolutely ***hinders*** and/or ***delays*** creditors, even if the debtor is candid about what he did (it creates a document that must be challenged and possibly litigated to avoid the document's effects).  Thus, the "actual intent to hinder" or "delay" standard would seem to be met.  Pre-bankruptcy planning is always a matter of degree; but the thermometer spikes high when acts are taken within hours of filing bankruptcy.  Debtor and the Non-Filing Spouse may claim to be merely protecting their family, but this is mostly semantics.  Without there having been some

other rational reason for the Partition Agreement (for example, a reason such as the Partition Agreement had been intended to reflect reality, since the homestead had been partly purchased with a separate property inheritance of the Non-Filing Spouse), then the only logical conclusion is there was an intent to shield more of the Homestead Net Sale Proceeds from creditors than the couple otherwise would have been entitled to keep.  In any event–morality and policy aside–the court believes the literal wording of section 522(p) dictates this result.  WHEREFORE,

**IT IS ORDERED, ADJUDGED, AND DECREED** that the Partition Agreement is avoided pursuant to section 548(a)(2)(A) of the Bankruptcy Code.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Non-Filing Spouse's pre-partition community property interest in the Texas Homestead (and the resulting Homestead Net Sale Proceeds derived therefrom) shall be recovered by Trustee, pursuant to section 550(a) and deemed part of the Bankruptcy Estate, pursuant to section 541(a)(2)(A).

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Trustee is granted Declaratory Judgment that she is entitled to retain the full balance of the Homestead Net Sale Proceeds and the Non-Filing Spouse has no right or interest in the Homestead Net Sale Proceeds by virtue of the Partition Agreement.

**\*\*\* END OF MEMORANDUM OPINION AND JUDGMENT \*\*\***