

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 21, 2015**

**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 13-33757-SGJ-7** |
| **JEREMY WIGGAINS,** | § | **(Chapter 7)** |
| Debtor. | § | |

_____

| | | |
|---|---|---|
| **TANYA WIGGAINS,** | § | |
| Plaintiff, | § | |
| VS. | § | **ADVERSARY NO. 14-03064-SGJ** |
| | § | |
| **DIANE G. REED, CHAPTER 7 TRUSTEE,** | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISTRIBUTE HOMESTEAD SALE PROCEEDS TO NON-DEBTOR SPOUSE, PURSUANT TO 11 U.S.C. § 363(j) [DE # 45] OR OTHER AUTHORITY [DE # 52]

### I.    INTRODUCTION

This Memorandum Opinion and Order ("Wiggains Opinion: Part II") addresses the final, "follow up" issue presented in the above-referenced adversary proceeding ("Adversary Proceeding")—the court having previously, on April 28, 2015, issued a memorandum opinion

-1-

and declaratory judgment that addressed the issues raised by the parties in their initial Complaint, Answer, and Counterclaims.

### a.  Subject Matter of the Adversary Proceeding.

This Adversary Proceeding involves a large and valuable Texas homestead (the "Texas Homestead") formerly owned by Jeremy Wiggains, the Chapter 7 Debtor (the "Debtor") and his non-debtor spouse, Tanya Wiggains (the "Non-Filing Spouse").  The Debtor and the Non-Filing Spouse acquired the Texas Homestead **within the 1215-day period preceding the date of the filing of the bankruptcy petition** (they purchased the Texas Homestead on or about November 27, 2012; the bankruptcy petition date was July 29, 2013).  Thus, pursuant to section 522(p)(1)(A) and (D) of the Bankruptcy Code—the so-called "mansion loophole" enacted as a part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA")[1]— the Debtor was not entitled to exempt more than $155,675 in value on the Texas Homestead. The Debtor agreed early on with the Chapter 7 Bankruptcy Trustee (the "Trustee") and certain creditors that his homestead exemption would be limited to a slightly lower amount than what is statutorily allowed under section 522(p): $130,675.[2]

---

[1] *See* H.R. Rep. 109-31, pt. 1, at 15-16 (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 102.

[2] The Debtor first entered an agreed order with the Trustee on December 2, 2013, ordering that the Debtor's homestead exemption would be allowed in the amount of $155,675.  *See* DE # 138 in the Bankruptcy Case. However, the Debtor later, on January 10, 2014, entered into an agreed order [DE # 178 in the Bankruptcy Case] with two creditors who had also objected to the Debtor's homestead exemption, providing that his homestead exemption would be capped in the amount of $130,675.  The amount was likely compromised further downward, due to the fact that one creditor had argued that the Debtor's homestead exemption should also be reduced pursuant to section 522(q)(1)(B)(i) of the Bankruptcy Code (arguing that the debt owed by the Debtor to the creditor might constitute a violation of securities laws) or, perhaps, for other reasons. Presumably, the Debtor desired to avoid additional expense and delay of litigation and to enjoy payment sooner rather than later on his homestead exemption.  Note that references to "DE # __ in the Bankruptcy Case" throughout this Opinion refer to the docket entry number at which a pleading appears in the docket maintained by the Bankruptcy Clerk in the above-referenced bankruptcy case.  Further note that references to "DE # __ in the AP" herein refer to the docket entry number at which a pleading appears in the docket maintained by the Bankruptcy Clerk in the Adversary Proceeding.

The Texas Homestead was sold by the Trustee during the early part of the above-referenced bankruptcy case (the "Bankruptcy Case") for $3.4 million, netting $568,668.41 of cash proceeds after payment of all liens, claims, and encumbrances (the "Homestead Net Sale Proceeds"). This Adversary Proceeding has essentially been a subsequent battle over the Homestead Net Sale Proceeds between the Trustee and the Non-Filing Spouse.

By way of further background, the Non-Filing Spouse and Debtor began marketing the Texas Homestead for sale, even before Debtor's bankruptcy filing. In August 2013, an offer for $3.4 million was made on the Texas Homestead and a purchase contract signed. Upon the Trustee's motion,[3] originally brought by Debtor,[4] and after a sale hearing held on September 6, 2013, the court authorized the sale of the Texas Homestead under the purchase contract in an order entered September 11, 2013 (the "Sale Order").[5] The Sale Order authorized this sale free and clear of any liens and encumbrances pursuant to 11 U.S.C. § 363(f)(3), and provided that any liens or other interests in the Texas Homestead would attach to the net sale proceeds according to the same extent and in the same order of priority that existed prior to the sale.[6] The Sale Order required the Trustee to retain the remainder of the sale proceeds except for payment of the Homestead Liens,[7] closing costs, and prorated real estate taxes (the "Disbursements"). The sale closed on or about September 17, 2013.[8] Afterwards, the Trustee made the Disbursements,

---

[3] *See* DE # 56 in Bankruptcy Case.

[4] *See* DE # 16 in Bankruptcy Case.

[5] *See* DE # 71 in Bankruptcy Case.

[6] *Id.*

[7] The Sale Order actually instructed the Trustee to wait thirty days before paying the consensual liens on the Texas Homestead in case any party in interest wanted to challenge the liens in an adversary proceeding. No party did, and the consensual liens were ultimately paid. *See id.*

[8] *See* Joint Pretrial Order [DE # 19 in AP], p. 6.

leaving a balance of $568,668.41 as the Homestead Net Sale Proceeds. The Homestead Net Sale Proceeds were further decreased by a disbursement of $130,675.00 to the Debtor, pursuant to the agreed orders pertaining to his homestead exemption, mentioned above.[9]

### b. Part I of the Adversary Proceeding.

The Adversary Proceeding was commenced with the Non-Filing Spouse's filing of a complaint (the "Complaint") against the Trustee on May 5, 2014 (more than six months after the Texas Homestead was sold), seeking a declaratory judgment, pursuant to 28 U.S.C. § 2201, as to the relative rights between her and the Trustee concerning the Homestead Net Sale Proceeds, by virtue of a certain marital property agreement entered into the same day as (and immediately prior to) the bankruptcy filing (the "Partition Agreement"). The eve-of-bankruptcy Partition Agreement purported to recharacterize the Texas Homestead from the community property of both the Debtor and Non-Filing Spouse into one-half his separate property and one-half her separate property. The Trustee responded with an answer and counterclaims (the "Answer and Counterclaims") of fraudulent transfer against the Non-Filing Spouse[10]—asserting that the Debtor's execution of the Partition Agreement constituted a ***voidable transaction committed with an actual intent to hinder and delay creditors***, pursuant to section 548(a)(1)(A) of the Bankruptcy Code[11] and pursuant to section 24.005(a)(1) of the Texas Business & Commerce Code (TUFTA), which is available to the Trustee pursuant to section 544(b) of the Bankruptcy Code.[12] On April 6, 2015, this court entered a Memorandum Opinion and Judgment: Declaring

---

[9] *See* DE # 138 & DE # 178 in the Bankruptcy Case. *See also* footnote 2, *supra*.

[10] Note that Trustee likewise requested declaratory judgment, pursuant to 28 U.S.C. § 2201 (2015), as to the Non-Filing Spouse's rights to the Homestead Net Sale Proceeds.

[11] Note that Trustee did not assert a constructive fraudulent transfer claim.

[12] The Debtor is not a party in this Adversary Proceeding.

Marital Partition Agreement Avoidable Pursuant to Section 548(a)(1)(A); Avoiding Same; and Declaring Balance of Homestead Net Sale Proceeds in Excess of Section 522(p) Cap to be Nonexempt Property of the Estate ("Wiggains Opinion: Part I"),[13] in which this court declared that:   (1) the Partition Agreement was avoided pursuant to section 548(a)(2)(A) of the Bankruptcy Code; (2) the Non-Filing Spouse's pre-partition community property interest in the Texas Homestead (and the resulting Homestead Net Sale Proceeds derived therefrom) would be recovered by Trustee, pursuant to section 550(a) of the Bankruptcy Code and deemed part of the bankruptcy estate pursuant to section 541(a)(2)(A) of the Bankruptcy Code; and (3) the Trustee was entitled to retain the full balance of the Homestead Net Sale Proceeds and the Non-Filing Spouse had no right or interest to the Homestead Net Sale Proceeds by virtue of the Partition Agreement.

### c.   *Part II of the Adversary Proceeding.*

Then, on April 20, 2015, the Non-Filing Spouse filed a Motion to Distribute Homestead Sale Proceeds Pursuant to 11 U.S.C. § 363(j) (the "Section 363(j) Motion to Distribute") *in the underlying Bankruptcy Case*[14]—arguing a new theory, in light of the court's ruling that the Partition Agreement would be voided and unenforceable: the Non-Filing Spouse requested a distribution from the Homestead Net Sale Proceeds pursuant to section 363(j) of the Bankruptcy Code as compensation for her *separate legal homestead interest* (which courts have held is a distinct legal interest from actual ownership and, thus, she would have this interest no matter whether the Texas Homestead was in the nature of community property, the debtor's sole

---

[13] DE # 34 in the AP.

[14] DE # 244 in the Bankruptcy Case.

management community property, or even the debtor's separate property).[15] Contemporaneously therewith, the Non-Filing Spouse filed a Motion to Alter or Amend Memorandum Opinion and Judgment (the "Motion to Amend"),[16] asking the court to essentially: (i) consolidate the contested matter that she had just initiated (with her filing of the Section 363(j) Motion to Distribute) into the Adversary Proceeding; (ii) alter the Wiggains Opinion: Part I to be an interlocutory judgment that would only become final and appealable after resolution of the newly-filed Section 363(j) Motion to Distribute; and (iii) hold an evidentiary trial on the Section 363(j) Motion to Distribute and then render a final judgment in the Adversary Proceeding.  The Trustee had no opposition to this proposed procedure. [17]  The court, being convinced that this procedure was allowable and consistent with Federal Rules of Bankruptcy Procedure 7015, 7018, 7042, 9014, and 9023, as well as Federal Rules of Civil Procedure 15, 18, 42 and 59(a)(2), granted the Motion to Amend and entered an ***Amended*** Memorandum Opinion and Judgment: Declaring Marital Partition Agreement Avoidable Pursuant to Section 548(a)(1)(A); Avoiding Same; Declaring Balance of Homestead Net Sale Proceeds in Excess of Section 522(p) Cap to be Nonexempt Property of the Estate; and Consolidating Plaintiff's Contested Matter Involving Section 363(j) Into Above-Referenced Adversary Proceeding and Setting July 1, 2015 Evidentiary Hearing on Same ("Wiggains Opinion: Part I, As Amended"),[18] in which this court: (1) declared (once again) that that the Partition Agreement was avoided

---

[15] *See, e.g., Thaw v. Moser (In re Thaw)*, 769 F.3d 366 (5th Cir. 2014); *Kim v. Dome Entm't Ctr., Inc. (In re Kim)*, 748 F.3d 647 (5th Cir. 2014).

[16] DE # 39 in the AP.

[17] The court held a status conference regarding this procedural matter on April 27, 2015.

[18] DE # 46 in the AP.  To be clear, the Wiggains Opinion: Part I, as Amended, altered in ***one sole respect*** Wiggains Opinion: Part I, in response to Plaintiff's Motion Amend: it consolidated into this Adversary Proceeding, pursuant to FED. R. BANKR. PRO. 9014 and 7042, the contested matter that was initiated by the Section 363(j) Motion to Distribute.

pursuant to section 548(a)(2)(A) of the Bankruptcy Code; (2) declared (once again) that the Non-Filing Spouse's pre-partition community property interest in the Texas Homestead and the resulting Homestead Net Sale Proceeds derived therefrom would be recovered by Trustee, pursuant to section 550(a) of the Bankruptcy Code and deemed part of the bankruptcy estate pursuant to section 541(a)(2)(A) of the Bankruptcy Code; (3) declared (once again) that the Trustee was entitled to retain the full balance of the Homestead Net Sale Proceeds and the Non-Filing Spouse had no right or interest to the Homestead Net Sale Proceeds by virtue of the Partition Agreement; *but also now (4) ordered that the Section 363(j) Motion and the contested matter initiated thereby would be consolidated into the Adversary Proceeding and set for a separate evidentiary hearing*.

On June 24, 2015, the Non-Filing Spouse filed an Unopposed Motion for Leave to Supplement Motion to Distribute Homestead Sale Proceeds Pursuant to 11 U.S.C. § 363(j) (the "Section 363 Supplement"),[19] wherein she argued that certain other provisions of the Bankruptcy Code—namely, sections 363(e)-(f) and section 105(a) of the Bankruptcy Code—might provide additional statutory authority for this court to award her a distribution from the Homestead Net Sale Proceeds. The court granted the Section 363 Supplement, which was unopposed by the Trustee, allowing the Non-Filing Spouse to argue the additional theories.[20] The court will hereafter refer to the Section 363(j) Motion to Distribute and the Section 363 Supplement, collectively, as the "Homestead Compensation Request."

An evidentiary hearing on the Homestead Compensation Request, was held on July 1, 2015 (the "Homestead Compensation Request Hearing"). On July 7, 2015 this court entered an

---

[19] DE # 52 in the AP.

[20] DE # 54 in the AP.

Order Directing Post-Hearing Briefing [DE # 56] (the "Post-Briefing Order"), which directed the Trustee and the Non-Filing Spouse to submit briefing on the following issues that the court believed might be germane to its determination of whether the Non-Filing Spouse would be entitled to any of the Homestead Net Sale Proceeds, under section 363 of the Bankruptcy Code or other authority:

1.      Who has the burden of proof on the current issue before the court?

2.      Is the requirement that proceeds from a sale of a Texas homestead be reinvested in another homestead within six months (to remain exempt)[21] a problem for the Non-Filing Spouse under the facts and circumstances of this case (*i.e.,* a bar to her request for relief), since more than six months elapsed between the sale of the Texas Homestead and the filing of this Adversary Proceeding by the Non-Filing Spouse? Did some sort of tolling concept apply? Even if there is no concept of tolling that applied, does the six-month rule[22] even matter in the context of Chapter 7 (*i.e.*, does the fact of no reinvestment of the homestead sale proceeds that were generated postpetition even matter in the context of a Chapter 7 estate)?

3.      Assuming there is no bar to the Non-Filing Spouse's request for relief (see question 2 above), does section 363(j) genuinely provide a mechanism to compensate the Non-Filing Spouse, since community property was involved? If not, does section 363(e) or other provisions of the Bankruptcy Code provide a mechanism for compensation?

4.      How relevant (if at all) is it that the Non-Filing Spouse may be obligated on some of the debts of the Debtor?

5.      How relevant (if at all) is it that the Debtor and the Non-Filing Spouse were attempting to sell the Texas Homestead prepetition and the Debtor (without opposition from and with support of the Non-Filing Spouse) initially moved to sell the Texas Homestead postpetition (and the Trustee simply adopted that motion)? Does this create a possible abandonment of Non-Filing Spouse's homestead interest or negate application of a life estate analogy for valuation purposes?

6.      How relevant (if at all) is it that the Non-Filing Spouse (and Debtor) were

---

[21] Tex. Prop. Code Ann. § 41.001(c) (West 2015).

[22] *Id.*

likely going to lose the Texas Homestead due to foreclosure because of their dire financial situation (assuming the evidence before the court supports that they were going to soon lose the Texas Homestead)?

Having reviewed the post-trial briefing,[23] the court finds that issues 4, 5 and 6 are not relevant to this court's determination of whether the Non-Filing Spouse is entitled to compensation from the Homestead Net Sale Proceeds pursuant to section 363 of the Bankruptcy Code or other authority. The court now examines the remaining issues below, and makes findings and conclusions in support of its ruling.

## II.    FINDINGS OF FACT

There was very little new evidence presented at the Homestead Compensation Request Hearing. The Non-Filing Spouse was the only testifying witness. She testified regarding her age at the time of the bankruptcy filing (34 years old); that she and the Debtor and their children were renting a house currently (at a cost of $5,000 per month) because they did not have adequate funds or means to purchase a new homestead; that the Debtor now works at a Toyota car dealership; and that they had used the $130,675.00 that the Debtor received earlier during the Bankruptcy Case on account of his agreed/capped homestead exemption for living expenses. The only other evidence that was offered by the Non-Filing Spouse was an Expert Report of James E. Turpin, FCA, MAAA, EA, dated June 25, 2015, that was a valuation of the Non-Filing Spouse's remainder interest and life estate in the Texas Homestead—offered by way of analogy, to attempt to value her separate, legal homestead interest. Using this report, the Non-Filing Spouse argued that she would be entitled to the equivalent of a life estate based upon the *Kim* case[24] (later discussed herein), which allegedly would amount to as much as 95% of the balance

---

[23] *See* DE ## 58 & 59 in the AP.

[24] *Kim v. Dome Entm't Ctr., Inc. (In re Kim)*, 748 F.3d 647 (5th Cir. 2014).

of the Homestead Net Sale Proceeds. The Trustee did not present any evidence at the Homestead Compensation Request Hearing. The court accepts as true the statements made by the Non-Filing Spouse at the Homestead Compensation Request Hearing. The court considers the Expert Report as irrelevant (for reasons stated further herein). And the court hereby incorporates by reference the extensive factual findings that were already made in the Wiggains Opinion: Part I, as Amended[25] and will not repeat them all herein.

### III. CONCLUSIONS OF LAW

The court has determined that it has subject matter jurisdiction over this Adversary Proceeding and the Homestead Compensation Request, pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O). The bankruptcy court additionally believes that it has Constitutional authority to enter a final judgment in this Adversary Proceeding.[26] Although a review of the Claims Register in this case does not reflect that the Non-Filing Spouse filed any proof of claim in the underlying bankruptcy case, she has essentially made a claim against the estate through the filing of the Adversary Proceeding in which she asserts an interest in the Homestead Net Sale Proceeds.[27] Additionally, the parties have consented to the bankruptcy court's adjudication of these matters.

> #### a. Issue 1: Who has the Burden of Proof with Regard to the Homestead Compensation Request? Answer: the Non-Filing Spouse.

In the Homestead Compensation Request, the Non-Filing Spouse is claiming an interest in and entitlement to some portion of the Homestead Net Sale Proceeds, on account of her

---

[25] DE # 46 in the AP.

[26] *Wellness Intern. Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1949 (2015); *see also Stern v. Marshall*, 131 S. Ct. 2594, 2611 (2011); *Exec. Benefits Ins. Agency v. Arkinson*, 134 S. Ct. 2165, 2171-72 (2014).

[27] *See* 11 U.S.C. § 102(2) (2015) ("'claim against the debtor' includes claim against property of the debtor").

separate, legal interest in the Texas Homestead, and is specifically asking the court to compensate that interest pursuant to sections 363(e), (f), (j) and 105(a) of the Bankruptcy Code. The Non-Filing Spouse has argued that the Trustee has the burden of proof in this contested matter because of Bankruptcy Rule 4003(c), which provides that in any hearing regarding an objection to an exemption, "the objecting party has the burden of proving that the exemptions are not properly claimed."[28] However, this contested matter (and the overall Adversary Proceeding) do not involve, at this juncture, an objection to an exemption claim. The Debtor's exemption in the Texas Homestead was determined before the filing of this Adversary Proceeding and was resolved pursuant to the agreed orders pertaining to his homestead exemption, mentioned earlier.[29] And the Non-Filing Spouse has never argued that she is entitled to "double" the statutory exemption cap, *per se*—indeed, the Bankruptcy Code itself does not afford a non-debtor spouse an additional homestead exemption, unless the non-debtor spouse jointly files for bankruptcy relief.[30] The issue at this juncture is whether some provision of section 363 operates such that the Non-Filing Spouse can be compensated from the Homestead Net Sale Proceeds for the portion thereof attributable to her ***separate legal homestead interest***. Accordingly, it appears that the Non-Filing Spouse has the burden of proof with respect to the relief she seeks, based upon section 363(p) of the Bankruptcy Code, which provides as follows:

> (p)     In any hearing under this section— …
>         (2) the entity asserting an interest in property has the burden of proof on the issue of the validity, priority or extent of such interest.[31]

---

[28] FED. R. BANKR. PRO. 4003.  *See also Chilton v. Moser (In re Chilton)*, 674 F.3d 486, 488 (5th Cir. 2012) (stating that a "claim of exemptions is presumably valid and the objecting party has the burden of proving that exemptions are not properly claimed") (*abrogated on other grounds by Clark v. Rameker*, 134 S. Ct. 2242 (2014)).

[29] *See* DE # 138 & DE # 178 in the Bankruptcy Case.  *See also* footnote 2, *supra*.

[30] *See generally*, 11 U.S.C. § 522 (2015); *see specifically* 11 U.S.C. § 522(m) (2015) (applying the allowance of state exemptions separately to a joint debtor).

[31] 11 U.S.C. § 363(p)(2) (2015).

The Non-Filing Spouse makes much of the fact that the Trustee did not put on any evidence at the Homestead Compensation Request Hearing.  But this is not fatal, as the Non-Filing Spouse ultimately had the burden of proof with regard to whether or not she is entitled to compensation under section 363 of the Bankruptcy Code for her claimed homestead interest.[32]

> **b.  Issue 2: Does the Texas Homestead Proceeds Rule Present a Problem For the Non-Filing Spouse Here, Since She Waited More than Six Months After the Postpetition Sale of the Texas Homestead to Bring this Adversary Proceeding? Alternatively, Is the Rule's Application (If Any) Equitably Tolled Pursuant to the Terms of the Sale Order?  Answer:  Equitable Tolling Applies.**

It is well accepted that Texas law provides extremely broad protection for homesteads. The law exempts homesteads from seizure or encumbrance in all but a narrow range of circumstances and caps homesteads in size, but not in value.[33]  Protection for a Texas homestead, at least initially, did not extend beyond the homestead itself, and once a homestead was "voluntarily sold or exchanged," all protection lapsed.[34]  However, in 1897, a law was enacted to exempt the ***proceeds*** of the sale of a homestead.[35]  Now, in addition to the homestead itself,

---

[32] In the Section 363 Supplement, the Non-Filing Spouse has asserted that she may be entitled to compensation for her homestead interest under ***section 363(e)*** of the Bankruptcy Code.  Section 363(e) of the Bankruptcy Code provides that "Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest . . . ."  Section 363(p) of the Bankruptcy Code provides that "in any hearing under this section—(1) the trustee has the burden of proof on the issue of adequate protection . . . ."  Thus, to the extent section 363(e) of the Bankruptcy Code provides a mechanism for the Non-Filing Spouse to receive some sort of compensation for her homestead interest, the Trustee would bear the burden of proof on the issue of ***adequate protection***, but the Non-Filing Spouse would still have the burden of proof with regard to whether she has an interest in the Homestead Net Sale Proceeds.  However, for the reasons articulated in section III(c)(5) hereto, the court does not believe that section 363(e) of the Bankruptcy Code provides a mechanism by which the Non-Filing Spouse could receive compensation for her homestead interest and, thus, the fact that the Trustee did not present evidence at the Homestead Compensation Request Hearing remains unproblematic.

[33] Tex. Prop. Code Ann. § 41.001, .002 (West 2015).

[34] *See, e.g., England v. F.D.I.C. (In re England)*, 975 F.2d 1168, 1174 (5th Cir.1992).

[35] *Id.*

-12-

Texas protects the proceeds of a homestead sale—but only for a limited time. Specifically, "proceeds of a sale of a homestead are not subject to seizure for a creditor's claim for *six months* after the date of sale."[36] Specifically, the proceeds lose their exempt status after six months, unless they are reinvested in another exempt Texas homestead.[37] This rule has often been referred to by courts as the "Texas Proceeds Rule."

In the case at bar, the Homestead Net Sale Proceeds were in existence for more than six months when this Adversary Proceeding was filed. The sale of the Texas Homestead closed on September 2013.[38] The Adversary Proceeding was filed May 5, 2014. Did the Non-Filing Spouse lose any ability to assert some entitlement to them? Arguably, if this court were to apply the Texas Proceeds Rule, the Homestead Net Sale Proceeds would no longer have any special status.

The Fifth Circuit has stated that the purpose of the proceeds rule is solely to allow the claimant to invest the proceeds in another homestead and not to protect the proceeds in and of themselves.[39] Even if a debtor purchases a new homestead within the six-month period, if he does not use *all* of the sale proceeds from the sale of the first homestead, then any unused homestead proceeds from that first homestead are instantly rendered non-exempt. *In the chapter 13 context*, courts have held that, where there is a postpetition sale of a debtor homestead, the proceeds lose their exempt status when not reinvested in another homestead within six months.[40]

---

[36] Tex. Prop. Code Ann. § 41.001(c) (West 2015).

[37] *England*, 975 F.2d at 1173-74.

[38] *See* Joint Pretrial Order [DE # 19 in the AP], p. 6.

[39] *England,* 975 F.2d at 1174-75.

[40] *Viegelahn v. Frost (In re Frost)*, 744 F.3d 384 (5th Cir. 2014) (during chapter 13 bankruptcy case, debtor sold homestead and used some of the funds for non-bankruptcy expenses; held debtor lost right to withhold proceeds

The issue is somewhat murky and appears to be unsettled in the **chapter 7 context**—at least

where the house is: (a) timely scheduled as exempt; and (b) then sold postpetition.[41]

---

from the estate when he failed to reinvest them in a homestead within six months); *see also Garcia v. Bassel*, 507 B.R. 907 (N.D. Tex. 2014) (same).

[41] *See, e.g., Zibman v. Tow (In re Zibman)*, 268 F.3d 298, 306 (5th Cir. 2001) (Chapter 7 case where debtors sold homestead on November 27, 1998, **before** filing bankruptcy on February 9, 1999–thus, they filed bankruptcy within the 6-month window to reinvest homestead proceeds into another homestead—and the debtors scheduled the full amount of proceeds as exempt; when the 6-month deadline for purchasing a new home expired, 106 days after the Chapter 7 case was filed, in May 1999, and the debtors had not purchased a new Texas homestead, the Chapter 7 trustee objected to the Debtor's claimed exemption to the proceeds; Fifth Circuit held that Chapter 7 trustee's objection should be sustained and the trustee should get the proceeds, stating that "[w]hen the Zibmans failed to invest the proceeds from the sale of their Houston homestead in another Texas homestead within the allotted time, the exemption on these proceeds evanesced by operation of law"; court addressed the so-called "snapshot rule" and stated that under such rule, a snapshot is taken of the facts **and applicable law** as of the date of the filing, further stating that it is the controlling exemption statute at the time of the filing, not the exempted character of the property, that undergirds the "snapshot rule"; all of the provisions of Section 41.001 of the Texas Property Code apply to a debtor's homestead exemption and, if he chooses to exempt his homestead under that law, he must accept the law in its entirety; the court cited to an old Supreme Court case called *Myers v. Matley*, 318 U.S. 627 (1943) as support for the notion that a debtor's postpetition acts could be relevant, as far as the validity of an exemption); *Studensky v. Morgan (In re Morgan)*, 481 Fed. Appx. 183, 185-87 (5th Cir. 2012) (unpublished) (chapter 7 debtor filed bankruptcy on July 30, 2010 and on August 6, 2010, the debtor sold house and used the proceeds to pay off a lien thereon held by his brother; on August 24, 2010, the debtor scheduled the already sold house at a value of $100,000 and listed his brother's lien as to the full value of the home; he claimed the federal exemptions and did not claim the homestead (or any value therein) as exempt; after trustee discovered this, the trustee challenged the validity of the brother's lien and demanded that the proceeds of $100,000 be paid back by the brother; thereafter, on February 11, 2011, the debtor filed amended schedules, this time claiming the Texas exemptions, and claimed a $100,000 homestead exemption; the trustee objected to the exemptions and argued that, under Texas law, the proceeds were only exempt for six months and ceased to be exempt from creditors' claims unless reinvested in another homestead within six months; both the bankruptcy court and district court overruled the trustee's objection, but the Fifth Circuit reversed, stating that the problem with the debtor's argument was that he overlooked the fact "that he did not claim a homestead exemption until *after* he sold his home, and even then, he did not claim any value of his home as exempt until he amended his bankruptcy schedules nearly seven months after filing his petition, and more than six months after he sold his homestead"; the Fifth Circuit considered whether the 6-month rule applied to the homestead sale in the chapter 7 case and, relying on its holding in *Zibman*, the Fifth Circuit held that the debtor's failure to reinvest the proceeds in another Texas homestead within six months resulted in those proceeds losing their exempt status). It nevertheless seems significant in *Studensky* that the debtor had not even claimed the homestead or proceeds as exempt until almost seven months postpetition and more than six months after the sale of the property (and the proceeds had not been reinvested in a homestead)—the court stressed several times that the debtor sold his home before ever claiming the homestead as exempt. *See also Cage v. Smith (In re Smith)*, 514 B.R. 838, 850 (Bankr. S. D. Tex. 2014) (J. Bohm) (Chapter 7 trustee filed an adversary proceeding requesting the turnover of proceeds from the postpetition sale of the debtor's homestead; sale occurred after debtor's discharge order was granted and after the deadline had passed for objecting to exemptions (and no party objected to his homestead exemption); chapter 7 case was filed March 20, 2012; the debtor received his discharge on April 25, 2013; then on June 21, 2013, the debtor sold his homestead, netting proceeds of $813,935.77 and the debtor did not reinvest the proceeds within 6 months; trustee filed an adversary proceeding seeking turnover of homestead sale proceeds on April 11, 2014; court held (in the context of debtor motion to dismiss for failure to state a claim) that only closing of the Chapter 7 case, rather than discharge of a debtor, would immunize homestead proceeds from the six-month rule). *But see In re D'Avila*, 498 B.R. 150, 159-160 (Bankr. W.D. Tex. 2013) (J. Davis) (holding that the Texas Proceeds Rule is only applicable in a chapter 13 bankruptcy case and would not apply where the debtor sells homestead property postpetition in a chapter 7 bankruptcy case).

However, this court does not ultimately need to determine this difficult issue of whether the Texas Proceeds Rule applies in Chapter 7, where such homestead has been timely scheduled as exempt and then sold postpetition, since the court believes that the time period for the Non-Filing Spouse to reinvest into a new Texas homestead any Homestead Net Sale Proceeds to which she was entitled was ***equitably tolled*** pursuant to the terms of the Sale Order that was entered on September 11, 2013.[42]

Specifically, the Texas Homestead became property of the Debtor's bankruptcy estate by operation of law under section 541(a)(2) of the Bankruptcy Code immediately upon the filing of the bankruptcy case by the Debtor on July 29, 2013 (although it was technically not clarified that the ***entire*** homestead property should be treated as community property and "property of the estate" until the court issued its Wiggains Opinion: Part I, on April 6, 2015, voiding the Partition Agreement). The Texas Homestead was sold on September 11, 2013, and the Trustee has continued to hold the Homestead Net Sale Proceeds (less the Disbursements made to lienholders and to the Debtor on account of his agreed, capped homestead exemption). Arguably, if this court were to apply the Texas Proceeds Rule, the Homestead Net Sale Proceeds would have only remained exempt through March 11, 2014 (six months after the Texas Homestead was sold and two months prior to the Adversary Proceeding being filed in May 2014). However, the court concludes that specific language in the Sale Order preserved whatever rights the Non-Filing Spouse had in the Homestead Net Sale Proceeds, pending further order of the court and, essentially, had a tolling effect. Specifically, the Sale Order provided that: (1) the Texas Homestead would be sold free and clear of all liens and other interests, and "any liens against, or interests in, [the Texas Homestead], ***including all homestead claims of the Debtor and his non-***

---

[42] DE # 71 in the Bankruptcy Case.

*filing spouse*, will attach to the net sale proceeds in the same order of priority and with the same rights as existed on the Petition Date";[43] and (2) the remaining sale proceeds that the Trustee received from Republic Title Company would not be disbursed by the Trustee except upon further order of this court.[44]  This language, on balance, appears to have frozen all parties' rights as to both the Texas Homestead and the proceeds thereof and sufficiently operated to equitably toll the application of the Texas Proceeds Rule.  The concept of equitable tolling has been utilized in a least one other published case, when a title company's actions and pending litigation prevented a husband and wife from having use of their homestead sale proceeds for a period of more than six months.[45]  In *Jones v. Maroney*, a husband and wife voluntarily sold their homestead with a title company conducting the closing on December 10, 1979.  The title company withheld the sale proceeds, due to an abstract of judgment lien on the homestead.  Less than one month later, on January 2, 1980, the husband and wife filed suit to declare the sale proceeds exempt.  The husband and wife filed a motion requesting that the trial court require the proceeds to be put by the title company into the registry of the court, pending final determination of the issues.  The opinion notes that the process of litigating these issues lasted for 176 days after the date that the funds were retained by the title company.  The trial court ultimately ruled that the proceeds were exempt and entered a judgment for the husband and wife on August 19, 1980 (which, notably, was more than six months after the sale proceeds were generated).  The funds were released to the husband and wife on that date.  On appeal, the party who had filed the abstract of judgment argued that, since more than six months had elapsed at the time of the

---

[43] *See* DE # 71 in the Bankruptcy Case (p. 2).

[44] *Id.* at p. 3.

[45] *Jones v. Maroney*, 619 S.W. 2d 296 (Tex. Civ. App.—Houston [1st Dist.] 1981, no writ).

August 19, 1980 ruling, the sale proceeds were no longer exempt. The court of appeals rejected this argument, stating that the purpose of the Texas Proceeds Rule would be "destroyed if the court would not toll the statute during the period of time the proceeds were involved in court litigation."[46]  The purpose of the statute was described as allowing a person, "free from legal interference, a reasonable time, six months, in which to exchange or invest proceeds in another home."[47]  The court in *Jones v. Maroney* also stated that it thought that no "sale of land" had actually occurred until August 19, 1980, when the cash proceeds were released to the husband and wife from the court's registry, since a "sale of land" has been defined as "a transmutation of such property from one person to another in consideration of a sum of money."[48]

In summary, this court concludes that the fact that the Non-Filing Spouse waited more than six months after the sale of the Texas Homestead to file this Adversary Proceeding, to assert a separate interest in the Homestead Net Sale Proceeds, is not fatal.  While it seems, at first blush, somewhat troubling that the Non-Filing Spouse waited more than six months to file the Adversary Proceeding for a determination of her rights, the fact is that she did not have access—free of legal interference—to the Homestead Net Sale Proceeds at any time since the sale of the Texas Homestead, and it appears to this court that the Sale Order was intended to freeze her and all parties' rights and arguments.  Thus, even if the Texas Proceeds Rule should apply in this Chapter 7 case,[49] the six-month time period for the Non-Filing Spouse to reinvest the proceeds

---

[46] *Id.* at 298.

[47] *Id.* at 297 (citing *Gaddy v. First Nat'l Bank of Beaumont*, 283 S.W. 277, 280 (Tex. Civ. App.—Beaumont 1926, no writ).

[48] *Jones*, 619 S.W.2d. at 298 (citations omitted).

[49] *See* footnote 41, *supra*.

has been tolled, and any homestead interest she may have in the Homestead Net Sale Proceeds remains intact until she receives actual possession of any proceeds that may be due to her. [50]

> ### c. Issue 3: Does Section 363 of the Bankruptcy Code Provide a Mechanism for the Non-Filing Spouse to Receive Compensation For Her Homestead Interest From the Homestead Net Sale Proceeds, and If So, How Much Is the Non-Filing Spouse Entitled To? Answer: Perhaps in Some Cases, But No Compensation is Warranted Here.

The Fifth Circuit's recent rulings in *Thaw*[51] and *Kim*[52] regarding a non-debtor spouse's "separate legal interest" in a homestead (separate and apart from fee simple ownership) have been the subject of much discussion and debate. Both of these cases involved situations, like the case at bar, where a non-filing spouse asserted independent rights as to a Texas homestead (and proceeds thereof), notwithstanding the fact that the non-filing spouse had not herself filed bankruptcy. Arguments ranging from (a) state law property rights versus federal preemption, to (b) Constitutional "Takings Clause" assertions (just to name a few) were urged on behalf of the non-filing spouses. This court must analyze both *Kim* and *Thaw* to reach a decision on Issue 3 set forth above, but to fully comprehend these decisions, one first must revisit the United States Supreme Court's decision in *United States v. Rogers*[53]—a tax case that the Fifth Circuit mentioned in both *Kim* and *Thaw*.

---

[50] The Fifth Circuit has stated that requests for equitable tolling are granted most frequently where the plaintiff is "actively mislead by the defendant about some cause of action or *is prevented in some extraordinary way from asserting his rights*." *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002) (emphasis added). While these situations are not clearly analogous to the Non-Filing Spouse's situation in the case at bar, the Non-Filing Spouse certainly was generally prevented from accessing the Homestead Net Sale Proceeds without a court order, and was not able to invest the proceeds.

[51] *Thaw v. Moser (In re Thaw)*, 769 F.3d 366 (5th Cir. 2014).

[52] *Kim v. Dome Entm't Ctr., Inc. (In re Kim)*, 748 F.3d 647 (5th Cir. 2014).

[53] *United States v. Rodgers*, 461 U.S. 677 (1983). The *Rodgers* case discussed herein should not be confused with the case of *Wallace v. Rogers (In re Rogers)*, 513 F.3d 212 (5th Cir. 2008), which the Fifth Circuit also discussed in *Kim*.

### 1. *United States v. Rodgers*

The *Rodgers* opinion does not deal with bankruptcy. It involves the consolidated appeals of two cases originating from federal district courts, in which the Internal Revenue Service had been engaged in collection attempts against delinquent taxpayers, seeking forced sales of their Texas homesteads which were co-owned with non-liable or "innocent" spouses. It addresses "the relationship between the imperatives of federal tax collection and rights accorded by state laws."[54] Specifically, section 7403 of the Internal Revenue Code[55] authorizes the judicial sale of certain properties to satisfy the tax debt of delinquent taxpayers. The issue in *Rodgers* was whether section 7403 empowers a federal district court to order the sale of a family home in which a delinquent taxpayer had an interest at the time he incurred his indebtedness, but in which the taxpayer's spouse, who does not owe any indebtedness, also has a separate "homestead" right as defined by Texas law. The *Rodgers* case involved two different situations involving so-called "innocent spouses": (a) in one situation, the Government filed suit against the widow, children, and executor of Philip Rodgers, to reduce to judgment, assessments made against Philip before his death for unpaid taxes and to enforce the Government's tax liens, including one that had attached to his interest in the homestead (still occupied by the widow); and (b) the other situation involved Mr. and Mrs. Ingram, a divorcing couple, where the wife had been conveyed a house in their divorce and tried to sell it but was unsuccessful, largely because of tax liens thereon associated with the husband's separate tax liabilities (in a subsequent suit involving the IRS and other governmental agencies, there was a stipulation among Mr. and Mrs. Ingram and the IRS to sell the house and put the money in the registry of court, pending further determinations).

---

[54] *Rodgers*, 461 U.S. at 680.

[55] 26 U.S.C. § 7403 (2015).

In its analysis, the Supreme Court spent a fair amount of time exploring the various contours of Texas homestead exemption law. The Court noted the restriction under Texas law on forced sale of a homestead for the payments of debt, except for certain exceptions (there being no exception for the IRS in the state statute).[56] The court noted restrictions on encumbering a homestead and the invalidity of liens thereon, except for certain ones (again there being no exception for the IRS under state statute).[57] The Court stated that "Texas gives members of the family unit additional rights in the homestead property itself."[58] Specifically, the Court noted that Tex. Const., Art. 16, Sec. 50 provides that "the owner or claimant of the property claimed as a homestead [may not], if married, sell or abandon the homestead without the consent of the other spouse, given in such manner as may be prescribed by law."[59] Also, the Court noted, "[o]n the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction to use and occupy the same."[60] The Court went on to conclude that the "effect of these provisions in the Texas Constitution is to give each spouse in a marriage *a separate and undivided possessory interest* in the homestead, which is only lost by death or abandonment, and which may not be

---

[56] *Rodgers,* 461 U.S. at 684.

[57] *Id.*

[58] *Id.*

[59] *Id.* at 684-685.

[60] *Id*. at 685.

Case 14-03064-sgj Doc 60 Filed 08/21/15 Entered 08/21/15 15:41:59 Page 21 of 33

compromised either by the other spouse or by his heirs."[61]  Noting that analogies are "somewhat

hazardous in this area,"[62] the Court stated that the Texas homestead laws have the effect of

reducing the underlying ownership rights in a homestead property to something akin to an

***undivided life estate*** in the property."[63] "[T]he Texas homestead right is not a mere statutory

entitlement, but a vested property right."[64]  "As the Supreme Court of Texas has put it, a spouse

'has a vested estate in the land of which she cannot be divested during her life except by

abandonment or a voluntary conveyance in the manner prescribed by law."[65]  A homestead,

however, can be lost through abandonment (unlike a generic life estate).  In summary, under

Texas statutory and constitutional provisions, each spouse—regardless of whether one or both

***owns*** the fee interest—has a separate and undivided possessory interest in the homestead, which

is only lost by death or abandonment, and may not be compromised by either spouse, or his or

her heirs, and which, in effect, is an interest akin to an undivided life estate in the property.[66]

Notwithstanding the above-revered aspects of Texas law, the Court further noted that "it

has long been an axiom of our tax collection scheme that, although the definition of underlying

property interests is left to state law, the consequences that attach to those interests is a matter

left to federal law."[67]  The special protections accorded by the exemption aspects of Texas

---

[61] *Id.*

[62] *Id.* at 685-686.

[63] *Id.* at 686.

[64] *Id.*

[65] *Id. (*citing *Paddock v. Siemoneit,* 147 Tex. 571, 585 (Tex. 1949)).

[66] *Rodgers,* 461 U.S. at 686.

[67] *Id.* at 683 (citing *United States v. Mitchell*, 403 U.S. 190, 205 (1971) (state law determines income attributable to wife as community property, ***but state law allowing wife to renounce community property rights and obligations was not effective as to liability for federal tax***) (emphasis added)).

homestead law do not immunize property held as a homestead by a non-delinquent third party from the reach of [26 U.S.C.] Section 7403.[68] "No such exception appears on the face of Section 7403, and the Supremacy Clause—which provides the underpinnings for the Federal Government's right to sweep aside state-created exemptions in the first place—is as potent in its application to innocent bystanders as in its application to delinquent debtors."[69] The Court ultimately concluded that "[w]hatever property rights attach to a homestead under Texas law are adequately discharged by payment of compensation, and no further deference to state law is required, either by Sec. 7403 or by the Constitution."[70]

In summary, the Supreme Court held that section 7403 of the Internal Revenue Code does, indeed, grant power to a federal court to order a forced sale of a Texas homestead—notwithstanding the provisions of Texas law that suggest to the contrary. But the Court also held that, if the home is sold, the non-delinquent spouse is entitled, as part of the distribution of proceeds required under section 7403, to so much of the proceeds as represents complete compensation for the loss of the homestead estate.[71] To be clear, the case only held that there can be a forced sale of both the liable spouse's and non-liable spouse's interests in the property to satisfy the tax debt. While the Court mentioned that the non-liable spouse would have a right to be compensated for her homestead interest, the Court never actually did a computation. The opinion merely contains some language of hypothetically how a computation *might* work, using actuarial tables for valuing (by analogy) life estates.[72]

---

[68] *Rodgers*, 461 U.S. at 678.

[69] *Id.* at 678-679.

[70] *Id.* at 702.

[71] *Id.* at 680.

[72] *Id.* at 698-699.

### 2. *Kim*

Fast-forward more than thirty years later to the *Kim* case.[73]  In the *Kim* case, a creditor, Dome, filed an involuntary chapter 7 bankruptcy case against Mr. Kim (but not his spouse) in December 2007.  An order for relief was entered and the case was converted to a chapter 11 case, at Mr. Kim's request.  Mr. Kim claimed an unlimited homestead exemption on his home in Irving, Texas.  Creditor Dome objected, arguing Mr. Kim should have, at most, a $136,875 dollar amount exemption, pursuant to section 522(p) of the Bankruptcy Code, since he purchased the home fewer than 1,215 days before the involuntary bankruptcy petition.  The bankruptcy court agreed and sustained the objection.  Note that the *Kim* case involved a homestead purchased ***before*** enactment of BAPCPA.

This was not the end of the litigation regarding the homestead.  Mr. Kim next filed an adversary proceeding seeking a declaratory judgment to determine:  (a) whether Mrs. Kim had separate, legal homestead rights in and to the property; and (b) if so, (i) whether such interests prevented a forced sale of the homestead in the bankruptcy case; and (ii) if it did not preclude a forced sale, whether Mrs. Kim was entitled to remuneration for her interest in the property.  Creditor Dome intervened in the adversary proceeding and sought its own declaratory judgment that:  (1) Mrs. Kim's interest in the homestead became a part of the bankruptcy estate on the petition date; (2) Mrs. Kim was not entitled to a separate exemption in the homestead; (3) that the bankruptcy court could force a sale of the homestead; and (4) Mrs. Kim's interest—including any right to compensation from a forced sale—was limited to her community interest in the debtor's exemption, and not an interest in the homestead itself.

---

[73] *Kim v. Dome Entm't Ctr., Inc. (In re Kim)*, 748 F.3d 647 (5th Cir. 2014).

The bankruptcy court held that Mrs. Kim had no protectable interest in the homestead. The district court affirmed.  The Fifth Circuit ultimately affirmed the holding that the bankruptcy court could force a sale of the homestead, notwithstanding the non-debtor's interest in the property.  Section 363 of the Bankruptcy Code is a federal law that grants this power.  However, the Fifth Circuit deviated from each of the lower courts' reasoning a bit *on the other issue of whether Mrs. Kim had a separate, vested, legal interest in the homestead—holding that she did*.  The court stated that the interest was something that provided "prophylactic protection" from most types of creditors[74] and "unlike the right of reimbursement, gives protective legal security rather than vested economic rights."[75]   Nevertheless, the Fifth Circuit ultimately held that the non-debtor spouse was not entitled to compensation for her individual Texas homestead interest, above and beyond the maximum $136,875 exemption then applicable to her husband under the section 522(p), and that, though homestead rights have some value to a spouse separate and apart from an ownership interest in the real property, *neither the debtor nor the non-debtor spouse had demonstrated that a "taking would occur unless Mrs. Kim is compensated more than the $136,875 exemption*," which would be impressed with her interest.[76] The court's language seemed to suggest that there might be a way that a debtor and non-debtor spouse could demonstrate a "taking" and show entitlement to compensation.  The court noted the *Rodgers* case had presented a hypothetical for how a life estate might be valued in the context of a forced taking of property, but noted that it was "only for the sake of illustration" and added that "[f]rom

---

[74] It would seem to this court that the homestead interest gives "prophylactic protection" in at least three instances (as impliedly acknowledged in *Rodgers*):  (a) from general creditors (*i.e.,* all creditors except those enumerated in statute);  (b) from one spouse's actions against the other (one spouse cannot sell or abandon the homestead without the other's consent); and (c) from the heirs of a deceased spouse (upon the death of one spouse, the surviving spouse may use or occupy the homestead during her whole lifetime if she chooses).

[75] *Id*. at 659.

[76] *Id.* at 663.

our examination of Texas law, it is not entirely clear that Texas courts would place exactly the same economic value on homestead rights as it would on a life estate" (noting, among other things, that the Texas Supreme Court had stated that the "homestead estate is not identical to a life estate because one's homestead rights can be lost through abandonment").[77]  Further citing to *Rodgers,*[78] the Fifth Circuit noted that a "constitutional argument is likely limited to cases, like this one, in which the real property that constituted the homestead was acquired ***before*** the BAPCPA was enacted."[79]  But the court added, with almost no elaboration, that "the Kims have failed to address the applicability of 11 U.S.C. § 363(j)" and that the court expressed "no opinion as to whether Mrs. Kim might be entitled to compensation under this section of the Bankruptcy Code."[80]

### 3. *Thaw*

Then, along came *Thaw*.[81]  The *Thaw* case was similar to *Kim* with one important distinction:  the Thaws purchased their Texas homestead ***after*** the enactment of BAPCPA.

In the *Thaw* case, Dr. Stanley Thaw filed for Chapter 7 bankruptcy protection in 2011. Stanley's wife, Kernell Thaw, did not file bankruptcy.  As mentioned, they purchased their residence after BAPCPA's enactment for a price of $2,150,000.  The chapter 7 trustee objected to Dr. Thaw's homestead exemption and filed an adversary proceeding against both Dr. and Mrs. Thaw.  Dr. Thaw eventually conceded that his exemption was capped at $146,450, pursuant to section 522(p) of the Bankruptcy Code.  Following a hearing, the bankruptcy court held that his

---

[77] *Id*. at 662.

[78] *Rodgers*, 461 U.S. at 697 n.24.

[79] *Kim*, 748 F.3d at 657 (citing *Rodgers*, 461 U.S. at 697 n.24).

[80] *Kim*, 748 F.3d at 663.

[81] *Thaw v. Moser (In re Thaw)*, 769 F.3d 366 (5th Cir. 2014)

homestead exemption should be further reduced to $0, pursuant to section 522(o) of the Bankruptcy Code, because of a finding that there was a scheme to hinder, delay and defraud creditors. ***But separately, Mrs. Thaw argued that she had a separate, vested homestead right that was not subject to the limits of section 522(o) and (p) and entitled her to compensation for it.*** Like Mrs. Kim, Mrs. Thaw argued that the sale by the trustee would constitute a forced sale and a taking under the Fifth Amendment for which Mrs. Thaw was entitled to compensation. The bankruptcy court and district court disagreed—holding that a forced sale could take place and Mrs. Thaw did not have a separate, vested property interest in the homestead exemption and there was no unconstitutional taking.

The primary issue on appeal before the Fifth Circuit (similar to the *Kim* case) was whether the bankruptcy court had authority to order a forced sale. The Fifth Circuit first reiterated, as in *Kim*, that a sale can be enforced as against a non-debtor spouse in bankruptcy, in spite of the non-debtor spouse's homestead rights. The court further stated that the Takings Clause of the United States Constitution did not preclude a forced sale or entitle Mrs. Thaw to compensation because "The Supreme Court has indicated that when a federal statute permits a person's property to become liable for the debts of another, a Takings Clause objection c[an] not be successfully interposed if the property interest 'came into being after enactment of the provision.'"[82]

Nevertheless, Mrs. Thaw made an additional Constitutional argument—specifically, that ***even a preexisting statutory scheme*** might operate in such a way as to result in a "gratuitous confiscation" of property.[83] Specifically, Mrs. Thaw suggested that the United States Supreme

---

[82] *Id*. at 369 (citing to *Kim* and also *Rodgers*).

[83] *Id*. at 370.

Court's decision in *Rodgers* did not go so far as to condone or permit an existing statutory regime that provides for the "gratuitous confiscation" of property.[84] In other words, even if one cannot make a Takings Clause argument, because the statute existed prior to purchasing a homestead, one may still have this other Takings Clause-type Constitutional argument, if the statute operates in such a way to confiscate a property interest. The Fifth Circuit did not accept Mrs. Thaw's argument. The court stated that the non-debtor spouse had not articulated "how a forced sale in this case would be a gratuitous confiscation."[85] The court stated that in *Rodgers,* there had been no "gratuitous confiscation"/Constitutional problem of this nature, ***because the relevant, preexisting Tax Code provision provided for compensation*** "by requiring that the court distribute the proceeds of the sale according to the findings of the court in respect to the interests of the parties and of the United States."[86] Similarly, the court stated:

> [T]he Bankruptcy Code is designed to minimize takings concerns. Section 363, the provision under which the property is to be sold, contains protections for non-debtor spouses. Like the Tax Code provision that the *Rodgers* court found militated against 'gratuitous confiscation,' Section 363(j) directs the trustee to apportion and distribute the proceeds of the sale to the non-debtor spouse and to the estate. 11 U.S.C. § 363(j). In addition, Section 363(i) gives non-debtor spouses a right of first refusal to purchase the property. 11 U.S.C. § 363(i). These safeguards show that a forced sale here will not be a gratuitous confiscation.[87]

In summary, the court indicated that Mrs. Thaw did not show that the sale of the property was "so unreasonable or onerous as to compel compensation."[88] Arguably, the implication was that circumstances might exist, in a particular case, that might warrant further compensation to a

---

[84] *Id*. at 370-71.

[85] *Id*. at 371.

[86] *Id.*

[87] *Id.*

[88] *Id.*

non-debtor spouse, rather than simply sharing in the debtor cap—but it simply had not been done here. Finally, the court added that section 363 governed "the distribution, if any, due to [Mrs. Thaw]" and that it would not issue an advisory opinion on how Section 363 should apply to apportion any sale proceeds in this case.[89]

### 4. *The Ten Principles that Can be Gleaned from Kim, Thaw, and Rodgers*

In reviewing this trilogy of opinions, this court has gleaned ten guiding principles for which it believes *Rodgers, Kim,* and *Thaw* stand: (1) a non-debtor spouse undeniably has a separate, legal interest in a Texas homestead, ***distinct and apart from actual ownership*** (and, thus, the non-debtor spouse has this interest no matter whether the homestead is in the nature of community property, or the debtor's sole management community property, or even the debtor's separate property); (2) this homestead interest protects the non-debtor spouse from certain creditor actions and even certain actions of her spouse and the spouse's heirs, and is similar to a life tenancy or life estate, but not entirely similar; (3) section 363 of the Bankruptcy Code permits a forced sale of the homestead when a debtor spouse is in bankruptcy, even though the other spouse is not in bankruptcy and has this separate homestead interest; (4) perhaps there are provisions of section 363, such as subsections (g), (h) and (j), that provide a mechanism for the non-debtor spouse to seek part of the proceeds of any such sale, to compensate her independently for her lost homestead interest (similar to how an innocent spouse may be entitled to some of the proceeds of an IRS forced sale of a Texas homestead to collect on one spouse's individual tax liability, as described in *United States v. Rodgers*), but the Fifth Circuit has not actually opined on that, since the non-debtor spouses in *Kim* and *Thaw* did not raise the issue of section 363; (5) in fact, the Fifth Circuit concluded in both *Kim* and *Thaw* that the non-debtor spouses had not

---
[89] *Id*. at 372.

demonstrated with any argument or evidence that the non-debtor spouses were entitled to anything more than the $136,875 exemption cap allowed to the debtor spouses in their individual bankruptcy cases, or that a "taking" would occur if the non-debtor spouses were not compensated more than this; (6) the Fifth Circuit suggested in *Kim*, and reiterated in *Thaw*, that a Constitutional "takings" argument is "likely limited" to cases such as *Kim* in which the homestead was acquired prior to the enactment of BAPCPA; (7) the *Kim* court noted that, even if some compensation were due to the non-debtor spouse for her divested homestead interest, Texas law is "not entirely clear that Texas courts would place exactly the same economic value on homestead rights as it would on a life estate" and the "assumptions used only for illustrative purposes in *Rodgers* would seem to overvalue homestead rights under Texas law"[90]—among other things, *a life estate can be sold for its market value but a homestead right in a residence cannot be sold*; (8) the value of a homestead would seem to be generally intrinsic to the non-debtor spouse, unless perhaps it was used to produce income for her, such as a rural or business homestead might;[91] (9) there has been no clear reason articulated why Congress's decision to permit an exemption of $136,875 for one spouse, or $273,750 when both spouses are debtors in bankruptcy,[92] is not "just compensation" to one or either spouse; and (10) even if a couple purchased a Texas Homestead after enactment of BAPCPA, there may conceivably be a hypothetical situation in which a forced section 363 sale might entitle a non-debtor spouse to compensation above the debtor-spouse's exemption cap, but it would only be if there was something about the sale of the property that was "so unreasonable or onerous as to compel

---

[90] *Kim*, 748 F.3d at 661-662.

[91] *Id.* at 662-663.

[92] 11 U.S.C. § 522(m) (2015). Note that these caps are now $155,675 and $311,350. 11 U.S.C. § 522(p) (2015).

compensation" or that amounted to "a gratuitous confiscation"[93] and the Bankruptcy Code has safeguards for this type of situation (citing section 363(j) and section 363(i)) that are designed to minimize "takings" concerns.

**5.** ***So Where Does this Leave Us? Answer: There Was No Evidence Here That the Sale of the Wiggains' Texas Homestead Was "So Unreasonable or Onerous As to Compel Compensation" Beyond the Section 522(p) Cap.***

So where does this all leave us? The answer here appears to be similar to the answer for Mrs. Kim and Mrs. Thaw: Mrs. Wiggains did not demonstrate that a "taking" would occur here if she is not paid more than the $130,675 that the Debtor already received (to which her homestead interest should be deemed to have attached). The evidence did not demonstrate that the sale of the Texas Homestead in this case was "so unreasonable or onerous as to compel compensation" or that it amounted to "a gratuitous confiscation" that warranted payment beyond the cap. Thus, the Expert Report submitted into evidence is irrelevant to the court. And, even if it were relevant, the court believes (taking the cue from the hint dropped in *Kim*) that valuing a homestead interest in the same way as a life estate would generally be over-valuing the homestead interest—particularly since the "prophylactic" interest is not something that can be sold like a life estate and has, in the typical case, mostly intrinsic value.

To be clear, unlike the non-debtor spouses in *Kim* and *Thaw*, the Non-Filing Spouse here has specifically requested relief under sections 363(j) or (e) of the Bankruptcy Code (no doubt, due to the dicta in *Kim* and *Thaw*), and the court believes that these Code sections may, ***in some unique situations***, provide a vehicle for a non-debtor spouse such as Mrs. Wiggains to be awarded just compensation in excess of the section 522(p) cap permitted for her debtor-spouse. To further be clear, the compensation in these unique situations would ***not*** be on account of the

---

[93] *Thaw,* 769 F.3d at 371-72.

-30-

non-filing spouse's community property interest. The Fifth Circuit has earlier stated, albeit in an unpublished case that should not be considered precedential, that section 363(j) does ***not*** provide a mechanism to compensate a non-filing spouse ***for a community property interest***, stating that it, by its terms, provides for payment of the non-debtor spouse's interest in property sold by a trustee ***only if the property is subject to section 363(g) or (h)***.[94] Subsection (g), governs 'dower or curtesy,' and does not apply to community property. Subsection 363(h), by its terms, applies only to property owned jointly by the estate and a third-party, ***not to property wholly owned by the estate***. Through the operation of section 541(a), a bankruptcy estate acquires both spouses' interests in the community property and is therefore the ***sole owner*** (even where one spouse does not file bankruptcy). Here, we are analyzing something wholly different from a community property interest or dower or curtesy. ***We are looking at an intangible, prophylactic interest that a spouse has—separate and apart from certain creditors, her spouse, and his/their heirs.*** It is something that may, in certain, special circumstances, be entitled to just compensation. And it would appear that either section 363(j) or (e) might be the mechanism to provide such compensation in these special circumstances (although (e) seems less likely—since it is really aimed at "adequate protection" that is requested at the time of usage or sale of property in which a non-debtor has an interest, to compensate for declines in value).

To reiterate, the court believes that there must be something special and unique about a non-debtor spouse's homestead interest so as to make it "onerous" or "confiscatory" to merely award the non-debtor spouse the section 522(p) homestead exemption cap. The court believes that it is reasonable to assume that Congress intended to simply permit an exemption of $155,675

---

[94] *Milbank v. Graham Barber College, Inc. (In re Solomon)*, 129 F.3d 608, at *3 (5th Cir. 1997) (unpublished). The court would note that, while the property at issue in *Solomon* was the non-filing spouse's community property, it was not a homestead. Specifically, it was stock.

for one spouse, or $311,350 when both spouses are debtors,[95] and that this is generally "just compensation" to one or both spouses. It should generally be regarded as complete compensation for the loss of the homestead estate. ***If spouses want to maximize their homestead protection, they simply need to both file bankruptcy.***

## IV.  CONCLUSION

In summary, while the Non-Filing Spouse availed herself of section 363(j) and (e) to seek compensation for her separate, legal homestead interest, the evidence she put on was not particularly compelling. There was no evidence that the Texas Homestead was income producing such as a rural or business homestead. There was nothing unique about this particular house. The Wiggains family had lived in the home for less than one year. There was no evidence that this particular Texas Homestead had anything more than general intrinsic value to her.[96] This court is not sure what type of evidence or situation might compel compensation beyond the section 522(p) cap. Maybe a house on a plot of land that—as a result of the non-debtor spouse's talents and effort—produced award-winning vines, grapes, and wine that ultimately supported the non-filing spouse? Or, assume a situation where Mr. and Mrs. Jones win the Texas Lottery and thereafter pay cash for a mansion. Then, tragically, the next day, they are in a car wreck and Mrs. Jones is rendered a paraplegic. The couple then reconfigure the mansion to be user friendly for all Mrs. Jones' physical needs, adding wheelchair ramps, lower countertops, shelving, cupboards, vanities, sinks, and even a therapy gym. The home is redesigned with the intention that Mrs. Jones can live there comfortably for her life. Eventually,

---

[95] 11 U.S.C. § 522(m) (2015).

[96] Indeed, in contrast to *Thaw* and *Kim*, the Trustee here did not even make the initial overtures to force the sale of the Texas Homestead; the Debtor and the Non-Filing Spouse marketed it prior to the Debtor's decision to file for bankruptcy relief; and the Debtor even improperly brought a motion to sell after the Petition Date, which became moot after Trustee properly moved for the same relief.

medical bills cripple the couple and Mr. Jones tries unsuccessfully to gamble his way back to solvency.  Mr. Jones then files bankruptcy less than 1215 days after the Joneses acquired the homestead.  The bankruptcy trustee realizes a quick sale of the home will pay almost all the creditors and sells it, proposing to pay $155,675 to Mr. Jones for his exemption, pursuant to section 522(p) of the Bankruptcy Code.  Would Mrs. Jones be able to successfully argue that it was "onerous" and "confiscatory" for her not to receive something more on account of her separate legal homestead interest than a simple sharing in the $155,675 paid to Mr. Jones?  Perhaps.  As former Supreme Court Justice Potter Stewart stated in a different context, "I know it when we see it."[97]  But the Wiggains case is not it.

**IT IS THEREFORE ORDERED** that the Section 363(j) Motion to Distribute and the Section 363 Supplement (collectively, the "Homestead Compensation Request") is hereby **DENIED**.  The Trustee shall promptly upload a Final Judgment that is consistent with this Wiggains Opinion: Part II and is also consistent with Wiggains Opinion: Part I, As Amended.

**\*\*\* END OF MEMORANDUM OPINION AND ORDER \*\*\***

---

[97] *Jacobellis v. Ohio*, 378 U.S. 184, 197 (1964) (Justice Stewart concurring opinion)